UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| R.S. LOGISTICAL SOLUTIONS LTD, | |
| Plaintiff, | Case No. 3:21-CV-00178 |
| v. | |
| JANUS GLOBAL OPERATIONS, LLC, and CALIBURN INTERNATIONAL, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

Plaintiff, R.S. Logistical Solutions LTD ("Plaintiff" or "RSLS") submits its Response in Opposition to Motion to Dismiss filed by Defendants Janus Global Operations, LLC ("JGO") and Caliburn International, LLC ("Caliburn") (collectively, "Defendants") and alleges as follows:

**<u>INTRODUCTION</u>**

This is an action arising out of a contract between RSLS and JGO. In the Complaint, RSLS alleges that "Defendants disregarded JGO's contractual commitments and legal obligations to RSLS" and asserts "breach of contract and related tort and equitable claims" against the Defendants. Complaint, ECF No. 1 ("Compl.") ¶¶ 3–4, ¶¶ 96–132.

In their Motion to Dismiss, ECF No. 21 ("Motion"), Defendants misconstrue, misunderstand, and ignore the substance of Plaintiff's well-pleaded allegations, particularly in regard to the breach of the Master Services Agreement ("MSA"). Exhibit A to Motion, ECF No. 21-1 ("Ex. A"). Defendants' Motion attempts to distract the Court's attention away from the

substantive allegations relevant to the Court's Rule 12(b)(6) analysis, and divert it toward a self-serving portrayal of the MSA as something less than a valid, enforceable contract. Defendants' arguments, if accepted, would require the Court to accept a revisionist retelling of the factual allegations in the Complaint in order to construe the MSA as essentially aspirational or ceremonial—little more than a glorified letter of intent or memorandum of understanding. However, Rule 12(b)(6) and applicable caselaw firmly prohibit the remodeling of the case to the Defendants' preferences and require denial of the Motion.

The Complaint, while detailed, is straightforward as a pleading for legal relief. RSLS has properly alleged the existence of a contract, actions by JGO constituting a breach of that contract, deliberate tortious actions by Caliburn that precipitated the breach, and damages incurred by RSLS as a result. Defendants' Motion fails to provide this Court any basis to dismiss RSLS's claims and should therefore be denied.

## LEGAL STANDARD & AUTHORITY

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990).

A Rule 12(b)(6) motion "requires the court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true."

*Slowik v. Lambert*, No. 3:19-CV-00501-DCLC, 2021 WL 1176075, at *2 (E.D. Tenn. Mar. 29, 2021) (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). "When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Swanigan v. Northwest Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039-40 (6th Cir. 1991)). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In ruling on a Rule 12(b)(6) motion, a court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## CORRECTIONS OF MISCHARACTERIZED ALLEGATIONS

Defendants' Motion mischaracterizes several allegations in the Complaint, including particularly misleading depictions of Paragraphs 61, 64 and 86 that must be addressed at the outset.

### Correction of Defendants' Mischaracterization of Paragraphs 61 and 64

Defendants' Motion cites Paragraphs 61 and 64 of the Complaint for the following assertions:

> JGO followed the terms of the MSA and provided a notice of termination in writing. (Compl. ¶ 61). JGO provided grounds for the termination based upon the customer's intent to terminate the task order because of plaintiff's insufficient compound site and, as outlined in the Complaint itself, the parties engaged in multiple discussions "at Senior Management levels" prior to the termination. (Compl. ¶ 64, Exhibit A).

Motion at 6-7 (emphasis added). The above statements do not accurately recite or reflect the allegations that Defendants cite as support. First, Paragraph 61 describes Defendants' sending of a notice of termination for convenience of an unexecuted Purchase Order, not the MSA.

Defendants are certainly aware of the distinction between the MSA and the unexecuted Purchase Order described in Paragraph 61,[1] but nevertheless make the misleading assertion that "JGO followed the terms of the MSA and provided a notice of termination in writing. (Compl. ¶ 61)." Motion at 6. In the absence of Defendants' deceptive editorializing, Paragraph 61 provides no support for Defendants' contention that the Complaint does not allege a breach of the termination provisions of the MSA. Further, the allegations in Paragraph 64 are diametrically opposed to the argument for which Defendants cite them. Contrary to Defendants' statement highlighted above, Paragraph 64 unequivocally alleges that "senior management level discussions…had not occurred." The stark difference between the allegations of Paragraphs 61 and 64 and Defendants' disingenuous rendering of the same have the effect of introducing and inappropriately intertwining disputed facts with Defendants' argument—a development that does not accord with motion practice under Rule 12(b)(6).

**Correction of Defendants' Mischaracterization of Paragraph 86**

Defendants' Motion cites Paragraph 86 of the Complaint for the following assertion:

Ultimately the Department of State modified the task order to memorialize the Ambassador's and RSO's direction that JGO should obtain a different housing solution than the one offered by plaintiff.

Motion at 4 (emphasis added). This statement is worth noting for two reasons. First, the use of the word "memorialize" suggests the existence of formal written documentation evidencing the

---

[1] Also worth noting is that Defendants almost immediately reclassified the "termination" of the Purchase Order as a "suspension." *See* Compl. ¶ 63.

Department of State's ("DOS") decision,[2] a misleading departure from what Paragraph 86 actually alleges:

> Finally, on May 16, 2020, Heasley sent an email to Shaposhnik stating that "yesterday the Department of State modified our Mogadishu WPS contract directing a housing solution consistent with their stated desire vice [sic] our proposed solution." <u>Heasley did not provide any supporting documentation to substantiate DOS's purported modification</u> of the Somalia WPS II contract.

Compl. ¶ 86 (emphasis added). Throughout the Complaint, RSLS alleges a pattern of false assurances (¶¶ 47-48, 60), mixed signals (¶ 54), equivocations (¶¶ 57-58, 67), and falsehoods (¶ 76) that strongly suggest that Defendants were not candid regarding the true status of DOS's purported concerns or whether DOS actually modified the task order as Defendants claimed. Paragraph 86 explicitly alleges that Defendants did not provide any documentation, i.e. *memorialization*, to authenticate the representation made on May 16, 2020 regarding DOS's purported modification of the task order.

Second, Defendants' statement that DOS "modified the task order to <u>memorialize</u> the Ambassador's and RSO's direction"—a factual assertion that cannot be found in Paragraph 86 or anywhere else in the Complaint—constitutes a responsive allegation by the Defendants that written documentation from DOS did, in fact, exist as of May 16, 2020. Questions regarding the absence/existence, content, and timing of alleged written documentation from DOS regarding modification of the task order are fact-finding priorities that will likely be material to the ultimate

_____

[2] *Memorialize* is a term of art for legal practitioners that is widely understood to refer to the act of putting a legally consequential decision into writing. *E.g.*, *Myers v. Greene Cty. Bd. of Educ.*, No. 2:16-CV-00096, 2018 WL 6031325, at *3 (E.D. Tenn. Nov. 15, 2018) ("To determine if the parties intended for the later <u>writing to memorialize their agreement</u>, a court may consider context …"); *Chenault v. Randstad USA Manufacturing & Logistics*, No. 5:18-CV-276-KKC, 2019 WL 2179211, at *7 (E.D. Ky. May 20, 2019) ("Parties often negotiate and agree … even where the parties intend to <u>memorialize their agreement in writing</u> later.")

determination of liability in this litigation, whether decided on summary judgment or at trial. Regardless of editorial intention, Defendants' use of the term "memorialize" in reciting the allegations of Paragraph 86 is a nontrivial distortion of the Complaint and an improper invitation to this Court to find facts on a motion to dismiss with an incomplete record. *See Selby v. Schroeder*, No. 2:20-CV-00016, 2021 WL 789890, at *2 (M.D. Tenn. Mar. 1, 2021) (rejecting defendant's "improper attempt to squeeze a dispute of material fact into a motion to dismiss").

Defendants' efforts to misconstrue the plain language and subvert the clear meaning of Paragraphs 61, 64 and 84 are improper as a matter of Rule 12(b)(6) motion practice.[3]

## ARGUMENT

### A. THE COMPLAINT STATES A CLAIM FOR BREACH OF THE MSA (COUNT I).

In Tennessee, a plaintiff alleging a breach of contract claim must show "the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *JHB & Sons Excavating, LLC v. Bass*, No. 217CV00141REEVESPOPL, 2018 WL 11304179, at *2 (E.D. Tenn. May 1, 2018) (citing *Federal Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011)). Here, the Complaint alleges that RSLS and JGO entered into the MSA (which Defendants do not dispute); that JGO disregarded RSLS's right to take corrective action under Section 1 of the MSA; that JGO violated the termination procedures of Section 12 of the MSA, chiefly by seeking to terminate the MSA for convenience without contractual justification, and by failing to provide written notice of termination and the basis thereof, whether for cause or for convenience, in the manner required under Section 12.

---

[3] On the topic of motion practice before this Court, RSLS would note that Defendants' Motion was not accompanied by a meet-and-confer notice as required under the Court's Order Governing Motions to Dismiss, ECF No. 7.

Compl. ¶¶ 96–106. The Complaint further states that, as a result of JGO's breach of the MSA, RSLS incurred damages in excess of $5 million. Compl. ¶¶ 91–95.

1. **The Complaint alleges JGO breached the MSA—a fully executed, enforceable contract on its own terms.**

Rather than providing a cogent explanation for how the allegations fall short of Rule 12(b)(6), Defendants attempt to define the MSA downward from an executed, enforceable contract to something essentially symbolic and incapable of being breached in the absence of executed Purchase Orders. Motion at 3, 6. Defendants cite paragraphs 52–54 of the Complaint in arguing that JGO cannot have breached the MSA because no Purchase Orders were executed between the parties. Motion at 3, 6. A straightforward review of the relevant allegations in the Complaint and provisions of the MSA show Defendants' argument to be nonsensical.

The MSA was the product of a nearly four-month negotiation process that began in late September 2019 with Defendants' introduction of Subcontracts Senior Administrator Michael Phillips and culminated on January 21, 2020 in the fully executed MSA. Compl. ¶¶ 37–40. The 26-page MSA included a detailed Scope of Work; Compensation Amounts (to the penny) for mobilization costs, annual performance and a five-year projected total; and provisions governing Suspensions and Terminations. Ex. A at § 2 pp. 2-5, § 5 pp. 7-8, § 12 pp. 15-16; Compl. ¶¶ 41–43. The MSA defined and governed the performance of the parties with regard to the Somalia Task Order, and to that end provided for Purchase Orders as the mechanism to deliver/receive the goods and services detailed in the Scope of Work. Ex. A §§ 1–2. That Purchase Orders were intended to serve as a major functional component of the MSA and that no Purchase Orders were executed is neither disputed nor relevant. The relevant document at issue is the MSA, and the mere existence of Purchase Orders cannot displace it in the allegations pleaded in the Complaint.

7

Defendants' arguments regarding Purchase Orders are a sideshow for purposes of the determination currently before this Court. RSLS alleges that JGO breached the MSA by, *inter alia*, disregarding the MSA's requirements for termination for convenience, and it is the sufficiency of the Complaint's allegations regarding the breach of the MSA that are the proper focus for the Court's Rule 12(b)(6) analysis.

### 2. RSLS has properly stated a claim for breach of contract based on JGO's improper termination for convenience.

Under the MSA's choice-of-law provision, Tennessee law governs the "validity performance and enforcement of any disputes related to [the MSA]", Ex. A, § 17, and, accordingly, the Complaint's allegations properly state contract and tort claims under Tennessee law. Liability will ultimately be determined under Tennessee law; however, given that the MSA draws from a framework of federal procurement regulations, decisions from the Federal Circuit (formerly the Federal Court of Claims) are instructive in analyzing the termination for convenience issue at the center of this dispute. *See Crouch Ry. Consulting, LLC v. LS Energy Fabrication, LLC*, 610 S.W.3d 460, 471 (Tenn. 2020) (noting that decisions of the federal circuit and district courts can be instructive in interpreting and applying due process requirements in context of specific case); *Malibu Boats, LLC v. MasterCraft Boat Co., LLC*, No. 3:16-CV-82-TAV-HBG, 2016 WL 8286158, at *3 (E.D. Tenn. Oct. 28, 2016) (Federal Circuit decision regarding patent infringement dispute "in situation exceedingly similar to the present suit, is particularly instructive").

While the Federal Circuit cases discussed below primarily concern disputes between contractors and government agencies (rather than between private parties as here), they provide well-reasoned guidance for evaluating claims stemming from wrongful termination for convenience.

### a. Wrongful termination for convenience has long been recognized as giving rise to contract claims.

In *TigerSwan, Inc. v. United States*, 110 Fed. Cl. 336 (Fed. Cir. 2013), the Federal Circuit discussed various situations in which the improper termination for convenience may give rise to breach of contract liability:

> The Federal Circuit has recognized several circumstances where the government, in exercising its contractual right to terminate for convenience may be liable for breach of contract. These circumstances certainly include <u>situations in which the government has acted with animus toward the contractor</u> but the Circuit has also recognized a potential breach claim where the government abused its discretion or <u>never intended for the contract to go forward</u>. *T & M Distribs.* [*v. U.S.*, 185 F.3d 1279, 1283 (Fed. Cir. 1999)], 185 F.3d at 1283; *Krygoski* [*Const. Co. v. U.S.*, 94 F.3d 1537, 1543–44 (Fed. Cir. 1996)]. In those later situations, allegations of animus toward the plaintiff are not necessarily required. For example, the "abuse of discretion" standard has been satisfied when the government has terminated a contract for convenience in order to get a better price for itself. *See e.g. Sigal Constr. Corp. v. General Services Admn.*, CBCA 508, 10–1 BCA ¶ 34,442 (May 13, 2010) (citing *Krygoski*, 94 F.3d at 1541). Similarly, the Federal Circuit has indicated that a breach may arise when the government <u>enters a contract without intending to allow the awardee to perform under the contract</u>. *Krygoski,* 94 F.3d at 1543–45; *Caldwell* [*& Santmyer, Inc. v. Glickman*, 55 F.3d 1578, 1582 (Fed. Cir. 1995)]. While these examples involve some form of "bad faith," the "bad faith" does not necessarily involve an intent to harm the contractor. Rather, the government may be liable for breach in situations where it took action at the expense of the plaintiff without necessarily acting with animus toward the plaintiff. The court reads these precedents to include liability for a breach of contract based on an improper termination for convenience <u>where the government has engaged in some form of improper self-dealing for its own benefit or to benefit another contractor</u>.

110 Fed. Cl. at 346–47 (emphasis added). The above examples of actionable wrongdoing arising from wrongful termination for convenience are actionable because even the government does not have unlimited discretion or the right to terminate contracts with impunity. *See Torncello v. United States*, 681 F.2d 756, 772 (Ct. Cl. 1982) (holding that "the government may not use the standard termination for convenience clause to dishonor, with impunity, its contractual obligations"). The same accountability applies with equal or greater force to Defendants, private actors, in the instant case.

9

### b. A breach of termination for convenience requirements negates accompanying limitations on damages.

The *TigerSwan* decision also discusses damages available for improper termination for convenience:

> "If a contractor can demonstrate that the agency's termination for convenience was improper, the contractor will not be limited to damages identified in the termination for convenience clause." In such a case, traditional common law damages for breach of contract will be available to the contractor.

*TigerSwan* at 345 (citing *Keeter Trading Co. v. United States*, 79 Fed. Cl. 243, 263 (2007)). Accordingly, the Complaint alleges that JGO's improper termination for convenience in violation of Section 12 of the MSA invalidates any limitation on damages otherwise potentially applicable under the MSA. *See* Compl. ¶ 91.

### c. The Complaint readily satisfies the criteria for stating a claim for breach of the MSA based on wrongful termination for convenience.

In *TigerSwan*, the court denied defendant's motion to dismiss plaintiff's breach of contract claim for improper termination for convenience after analyzing allegations that the government engaged in conduct to prevent the plaintiff from performing an awarded contract in order to ensure incumbent contractor retained the contract:

> Tested by these standards, TigerSwan has alleged sufficient facts to demonstrate a potential breach of contract for improper termination for convenience based on the government's alleged "abuse of discretion" and failure to honor its contract with TigerSwan. At the pleading stage, the court does not demand "the level of factual specificity" required to prove the case on the merits. *In re Bill of Lading*, 681 F.3d at 1342. Instead, as noted above, the plaintiff must only plead enough facts to enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). The court here is less concerned with the complaint's "precise language" and instead determines whether the "facts, when considered in their entirety and in context, lead to the common sense conclusion" that the DOD breached its contractual duties by terminating TigerSwan's contracts. *Id.* at 1343. Here, the facts, as alleged in the complaint, demonstrate that the DOD engaged in a pattern of conduct to ensure that Aegis completed the contract notwithstanding the awards to TigerSwan.

10

*TigerSwan* at 345 (emphasis added). The allegations in the Complaint present a similar pattern as underlined above with respect to Defendants' determination to engineer circumstances to ensure that Bancroft would remain the secured housing provider notwithstanding the award to RSLS. *See* Compl. ¶¶ 13–14, 27, 38, 55–56, 89. The factual allegations in the Complaint provide more than sufficient specificity as to the actions by JGO that comprised (or precipitated, in the case of Caliburn) the wrongful termination of convenience, constituting a breach of the MSA.

## B. THE COMPLAINT STATES A CLAIM FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT II).

"In Tennessee, a duty of good faith and fair dealing is imposed in the performance and enforcement of every contract." *Moore v. Westgate Resorts Ltd., L.P.*, No. 3:18-CV-00410-DCLC, 2020 WL 6814666, at *22 (E.D. Tenn. Nov. 18, 2020) (citing *Lamar Advert. Co. v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009)). Tennessee courts have determined that the purpose of the implied duty of good faith and fair dealing is "(1) to honor the reasonable expectations of the contracting parties and (2) to protect the rights of the parties to receive the benefits of the agreement into which they entered." *Westgate Resorts*, 2020 WL 6814666, at *22 (citing *Cadence Bank, N.A. v. The Alpha Trust*, 473 S.W.3d 756, 769 (Tenn. Ct. App. 2015)). Parties to a contract are presumed to know the law and that every contract contains this implied duty. *Id.*

A claim for breach of the implied covenant of good faith and fair dealing is not a stand-alone claim; rather it is part of an overall breach of contract claim. *Universal Properties, Inc. v. Regions Bank*, No. 3:11-CV-538, 2012 WL 4360770, at *8 (E.D. Tenn. Sept. 21, 2012) (citing *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000)). A breach occurs when "a party to the contract exercises discretion authorized in a contract in an unreasonable way." *Id.*

11

(citing *Jones Express, Inc. v. Watson*, 2012 WL 1717312 (M.D. Tenn. May 15, 2012)); *see also TigerSwan, Inc. v. United States*, 110 Fed. Cl. 336, 346 (2013) ("In deciding whether there was a breach of [the duty of good faith and fair dealing], the court examines the circumstances surrounding the alleged breach. Parties can show a breach of the implied duty of good faith and fair dealing by proving lack of diligence, negligence, or a failure to cooperate.") (citations omitted).

The Complaint directly alleges that JGO, in the course of breaching the MSA, abused its discretion, undermined RSLS's key in-country relationships, and failed to be candid with RSLS on multiple occasions. Compl. ¶¶ 47–49, 55–58, 64, 66, 73–76, 78. *See Westgate Resorts*, 2020 WL 6814666, at *23 (consolidating its analysis with a breach of contract claim and finding that allegations of "careful omissions" and "affirmative verbal misrepresentations" by defendants constituted a plausibly pled claim breach of the covenant of good faith and fair dealing). The Complaint properly states a claim for breach of contract by JGO, as well as alleging facts that, if assumed to be true as required under Rule 12(b)(6), readily withstand Defendants' request for dismissal of RSLS's claim for breach of implied covenant of good faith and fair dealing. *Lamar Adver. Co. v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009) ("Whether a party acted in good faith is a question of fact."), *perm. app. denied* (Tenn. March 15, 2012).

## C. THE COMPLAINT STATES A CLAIM FOR ANTICIPATORY REPUDIATION (COUNT III).

A party to a contract can take certain actions or make certain statements that repudiate it. Such a repudiation can occur when a party "commit[s] a voluntary act which renders the party unable or apparently unable to perform the contract." *UT Med. Grp., Inc. v. Vogt*, 235 S.W.3d 110, 120 (Tenn. 2007) (emphasis added) (citing *Wright v. Wright*, 832 S.W.2d 542, 545 (Tenn. Ct. App. 1991)). The Complaint contains multiple allegations of statements and actions indicating JGO's vacillating intentions with regard to the (fully executed) MSA, the effect of which rendered

RSLS unable to perform the MSA. *See* Compl. ¶¶ 55–58, 67, 77–78. Rather than address these allegations as they are pleaded, Defendants resort to the fiction that there was no contract.

Defendants' argument regarding anticipatory repudiation consists of a lengthy recitation of caselaw followed by a single, convoluted paragraph:

> Again, plaintiff has confused a lawful termination with a breach. Notice was provided, and the MSA was properly terminated. There is no anticipation that JGO will not perform its duties under a contract because there is no contract. A breach cannot be "anticipated" for a contract that is not in effect. Count III should be dismissed for failure to state a claim upon which relief can be granted.

Motion at 9.

To the extent a cogent argument can be discerned in the above paragraph, Defendants appear to contend that anticipatory repudiation was impossible because the MSA was already "properly terminated" and "there was no contract." These are not arguments, but wishcasting. The Complaint properly states a claim for anticipatory repudiation, and the Court should reject Defendants' groundless assertions to the contrary.

### D. THE COMPLAINT PROPERLY PLEADS CLAIMS FOR TORTIOUS INTERFERENCE AND TORTIOUS INDUCEMENT (COUNTS IV AND V) AGAINST CALIBURN.

As acknowledged by Defendants, Tennessee law provides for both a statutory claim for "inducement of breach of contract" under Tenn. Code Ann. § 47-50-109 and a common law claim for "tortious interference with performance of contract." Motion at 9-10. The elements for these two claims are the same: "(1) that there was a legal contract; (2) that the defendant knew of the existence of the contract; (3) that the defendant intended to induce a breach of the contract; (4) that the defendant acted maliciously; (5) that the contract was actual[ly] breached; (6) that the defendant's acts were the proximate cause of the breach; and (7) that the plaintiff suffered damages resulting from the breach." *Keith v. Aerus, LLC*, No. 2:09-CV-297, 2010 WL 3883434, at *4 (E.D.

Tenn. Sept. 29, 2010) (citing *Lee v. State Volunteer Mut. Ins. Co.*, 2005 WL 123492 (Tenn. Ct. App. 2005) and *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 359 (Tenn. Ct. App. 1999)).[4]

Defendants again resort to the circular logic that requires acceptance of Defendants' grossly selective, misleading reading of the Complaint and a legal conclusion that the MSA was not a contract or was not breached. In any event, the allegations in the Complaint are more than sufficient to allege that Caliburn, most prominently through the actions of Caliburn's Senior Vice President Tom Heasley, tortiously interfered with and induced JGO's breach of the MSA.

Notwithstanding Defendants' insinuations that the MSA was not a contract, the existence of the MSA is undisputed. *See* Exhibit A. The Complaint plainly alleges that Caliburn was aware of the MSA:

> After DOS's September 2019 award of the Somalia Task Order to JGO, on October 3, 2019, RSLS's owner and president Roy Shaposhnik ("Shaposhnik") met with members of JGO at Caliburn's headquarters in Reston, Virginia where he was introduced to Thomas Heasley ("Heasley"), a Caliburn Senior Vice President who was described as the executive in charge of JGO's performance of the Somalia Task Order.

Compl. ¶ 35; *see also* Compl. ¶ 120. The Complaint alleges that, mere days after JGO had executed the MSA, Heasley indicated privately to JGO personnel that he/Caliburn intended for the MSA to be cancelled. Compl. ¶ 55. The Complaint alleges that Caliburn's intended to orchestrate the improper termination of the MSA even prior to JGO's execution of the MSA. Compl. ¶ 56. The

---

[4] While the elements of these claims are the same, the standards of proof differ. The common law claim requires proof under a preponderance of the evidence standard, while the statutory claim requires a "clear showing." *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 359-60 (Tenn. Ct. App. 1999). Upon a clear showing, the statutory claim provides for automatic treble damages. *Id.* These differences are not relevant at the pleading stage.

14

Complaint alleges that Heasley and other Caliburn's senior executives knew that JGO did not have grounds to terminate the MSA for convenience. Compl. ¶¶ 66–67, 121.

In addition, the Complaint alleges multiple actions by Caliburn showing malice: Heasley made a false/insincere promise to RSLS regarding coordination of a meeting with SKA, one of RSLS's key, in-country partnerships, Compl. ¶¶ 47–48; Heasley and other Caliburn personnel approached SKA, without RSLS's knowledge, asking about the details and firmness of SKA's agreement with RSLS, Compl. ¶ 49; Heasley made a false/insincere promise to arrange a call between RSLS and Caliburn's senior management, Compl. ¶¶ 57–60; Heasley acted with "calculated, flagrant indifference" to JGO's contractual obligations to RSLS, Compl. ¶ 73; and Caliburn's COO falsely asserted that RSLS's owner had improperly contacted DOS, Compl. ¶ 76. The Complaint properly alleges that Caliburn maliciously induced JGO's breach of the MSA, which resulted in damages to RSLS. Compl. ¶¶ 122–123. *See Spectrum Lighting & Controls, Inc. v. SESCO Lighting, Inc.*, No. 218CV02253TLPCGC, 2018 WL 5905145, at *3 (W.D. Tenn. Nov. 9, 2018) (for purposes of motion to dismiss, court could infer that misleading communications alleged to have caused breach are inherently malicious).

Defendants' argument utterly fails to address the above well-pleaded allegations that comprise RSLS's claims for tortious interference and tortious inducement against Caliburn. The Motion should be denied.

E. **THE COMPLAINT PROPERLY PLEADS A CLAIM FOR *QUANTUM MERUIT* (COUNT VI) AGAINST BOTH DEFENDANTS.**

Defendants' Motion erroneously argues that RSLS's *quantum meruit* claim fails to reference any theory or allegation against Caliburn. Motion at 11. Defendants ignore the multiple allegations that Caliburn was a stakeholder in and beneficiary of the goods and services provided

by RSLS in the course of its interactions with JGO, Caliburn's subsidiary. Compl. ¶ 7. A Caliburn executive, Tom Heasley, was appointed as the executive in charge of JGO's performance of the Somalia Task Order. Compl. ¶ 35. Heasley informed RSLS's owner that "we at Caliburn value our relationship with you and look forward to many successful endeavors in various locations for years to come[.]" Compl. ¶ 57. Caliburn's COO emphasized "we value [RSLS's] reputation and capabilities" and identified Caliburn executives who "have been involved in supporting <u>all facets of this capture</u>, <u>protest resolution</u> and <u>execution/transition phases</u> of the program. *** [T]his has the highest level of attention on <u>the Caliburn leadership team</u>." Compl. ¶ 74 (emphasis added). Caliburn's status is reinforced on the first page of the MSA, which features JGO's name and logo followed by the caption "a Caliburn company." Ex. A at p. 1. In sum, the Complaint plainly and properly alleges that Caliburn recognized the value RSLS provided to the Defendants in winning and successfully defending the awarded Somalia Task Order.

Recovery under the theory of *quantum meruit* is based on a legally implied promise to pay a reasonable amount for goods and services received, with such amount limited to the actual value of the services received. *Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf, Haldenstein Adler Freeman & Herz, LLP*, 601 F. Supp. 2d 991, 999 (W.D. Tenn. 2009) (citing *Mitch Grissim & Assocs. v. Blue Cross & Blue Shield of Tenn.*, 114 S.W.3d 531 (Tenn. Ct. App. 2002)). RSLS provided valuable goods and services to Caliburn by supporting JGO's winning bid for and successful defense of the Somalia Task Order. Compl. ¶ 130. JGO had promised to engage RSLS as a subcontractor, and RSLS reasonably expected that its support of the awarded task order would ultimately be compensated through JGO's performance of the MSA. Compl. ¶ 131. Instead, Caliburn reaped the benefits of RSLS's work while at the same time planning and ultimately orchestrating the wrongful termination of the MSA.

16

Defendants further assert that the existence of an enforceable contract, i.e., the MSA, precludes recovery in *quantum meruit*. Motion at 11. This argument is unavailing as the Complaint makes it clear that RSLS's *quantum meruit* claim is in addition to the damages resulting from JGO's breach of the MSA and Caliburn's tortious interference with the MSA. *See* Compl. ¶¶ 130–131. *See also U.S. ex rel. Mesa Assocs., Inc. v. PAS-COY, LLC*, No. 3:12-CV-568, 2013 WL 3834038, at *2 (E.D. Tenn. July 23, 2013) (noting that a complaint may plead alternative theories and that many courts have construed Rule 8(d) of the Federal Rules of Civil Procedure to allow parties to alternatively plead claims for *quantum meruit* and breach of contract).

Finally, Defendants contend that the Complaint does not allege in adequate detail the "considerable resources" expended in assisting Defendants in preparing the bid and defending the award. Motion at 11. However, recovery under *quantum meruit* is not measured by the detriment to the plaintiff but by the benefit conferred on the defendant. *Mitch Grissim & Assocs. v. Blue Cross & Blue Shield of Tennessee*, 114 S.W.3d 531, 538 (Tenn. Ct. App. 2002). The Complaint alleges that the proposal prepared by RSLS was instrumental in JGO's winning the Somalia Task Order and that RSLS's support was critical to the successful defense of the award during the bid protest. Compl. ¶¶16, 21, 23, 30–32. The benefit conferred on Defendants by RSLS's work was significant, giving rise to the well-pleaded *quantum meruit* claim in the Complaint. Defendant's Motion to dismiss this claim should be denied.

F. **RSLS ALLEGES RECOVERABLE DAMAGES ARISING FROM JGO'S BREACH OF THE MSA'S TERMINATION FOR CONVENIENCE CLAUSE AND CALIBURN'S TORTIOUS INTERFERENCE THAT PRECIPITATED THE WRONGFUL TERMINATION OF THE MSA.**

Defendants argue that the MSA eliminates RSLS's ability to recover damages and therefore the Complaint fails to allege the essential element of damages for each claim asserted by

17

RSLS. Motion at 12-13. Defendants' argument is misguided and readily refuted by both the substance of the Complaint and applicable caselaw.

First, the Complaint's contract claim alleges that JGO wrongfully terminated the MSA <u>in its entirety</u>. RSLS is not alleging a breach of a particular purchase order, change order, scope of work item, or invoicing term, but the wholesale, unilateral termination of the MSA without contractual justification, in violation of Section 12 of the MSA. Consequently, RSLS has the right to pursue the full range of contract damages, including out-of-pocket damages, lost profit damages, damage to its reputation and loss of good will. Compl. ¶¶ 92–95. *See Keeter Trading Co. v. United States*, 79 Fed. Cl. 243, 263 (Fed. Cir. 2007) (where decision to terminate contract for default was made in bad faith, the contractor will not be limited to damages in accordance with the termination for convenience clause—"Instead, the contractor may recover traditional breach of contract damages.").

Tennessee contract law enables a party to "recover all damages that are the reasonably foreseeable consequence of a breach of the contract." *Spec's Fam. Partners, Ltd. v. First Data Merch. Servs. Corp.*, No. 214CV02995JPMCGC, 2017 WL 4547168, at *6 (W.D. Tenn. July 7, 2017) (quoting *Wilson v. Dealy*, 434 S.W.2d 835, 838 (Tenn. 1968)), *aff'd sub nom. Spec's Fam. Partners, Ltd. v. First Data Merch. Servs. LLC*, 777 F. App'x 785 (6th Cir. 2019). The purpose of damages in a breach of contract case is to place the injured party, as nearly as possible, in the same position it would have been in had the contract been performed. *Hennessee v. Wood Group Enters., Inc.*, 816 S.W.2d 35, 37 (Tenn. Ct. App. 1991). Such recoverable damages include lost profits. *See Johnson v. Welch*, No. M2002-00790-COA-R3CV, 2004 WL 239756, at *17 (Tenn. Ct. App. Feb. 9, 2004) (affirming trial court's award of damages calculated as the net profits that plaintiff would have made in absence of defendant's breach); *McClain v. Kimbrough Const. Co.*,

18

806 S.W.2d 194, 200 (Tenn. Ct. App. 1990) (where contractor improperly terminated, the "proper measure of damages in this situation is the net profits the subcontractor would have made had it been permitted to complete the contract"). RSLS has more than adequately alleged contract damages allowable under Tennessee law. *See* Compl. ¶¶ 92– 94, 106, 114, 118.

Lost profits are also clearly recoverable under Tennessee law as a result of wrongful inducement of breach of contract. *See Dorsett Carpet Mills, Inc. v. Whitt Tile & Marble Distributing Co.*, 734 S.W.2d 322, 324-26 (Tenn. 1987) (asserting that "generally the lost profit element of damage must be measured by the loss sustained by the plaintiff's business"). Further, "compensatory damages recoverable pursuant to a procurement of breach action are broader than those recoverable under a breach of contract action." *Reinhart v. Knight*, No. M2004-02828-COA-R3CV, 2005 WL 3273072, at *6–7 (Tenn. Ct. App. Dec. 2, 2005). "Specifically, a plaintiff may recover at least two additional classes or categories of compensatory damages in a procurement action: (1) consequential losses for which the interference is a legal cause; and (2) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference." *Id.*; *see also Spectrum Lighting & Controls, Inc. v. SESCO Lighting, Inc.*, No. 218CV02253TLPCGC, 2018 WL 5905145, at *3 (W.D. Tenn. Nov. 9, 2018) (allegation that tortious interference caused three of plaintiff's employees to resign was sufficient to allege damages at pleading stage). The Complaint unmistakably pleads that RSLS incurred damages, including lost profits and reputational harm, caused by Caliburn's tortious interference with and inducement of the breach of the MSA. Compl. ¶¶ 90–95, 119–128.

Defendants' argument is merely the recitation of a legal conclusion that fails to engage the substance and breadth of the allegations regarding damages pleaded in the Complaint, and, as such, provides no viable support for the Motion before this Court.

19

**G. DEFENDANTS' REQUEST FOR ATTORNEYS' FEES SHOULD BE DENIED.**

Defendants invoke the MSA's provision regarding the award of attorneys' fees to the "prevailing party." Motion at 12; Ex. A § 27. As argued above, Defendants' Motion fails to meet the requirements for dismissal under Rule 12(b)(6) and should be denied, along with any request for attorneys' fees.

## CONCLUSION

Defendants' Motion is largely a self-serving, inaccurate remodeling of the Complaint in an effort to obtain a dismissal that is wholly unwarranted under Rule (12)(b) and governing caselaw. The Court should deny, in all respects, Defendants' Motion to Dismiss.

Dated: July 21, 2021

Respectfully submitted,

/s/ Michael J. Sullivan
Michael J. Sullivan, *pro hac vice*
Kimberly West, *pro hac vice*
Nathan P. Brennan, *pro hac vice*
ASHCROFT SULLIVAN, LLC
200 State Street, 7th Floor
Boston, MA 02109
P: 617-573-9400
msullivan@ashcroftlawfirm.com

*Counsel for Plaintiff*

Lawrence J. Laurenzi (TN Bar No. 9529)
Sarah E. Stuart (TN Bar No. 35329)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue

20

Memphis, TN 38103
P: 901-524-5000
llaurenzi@bpjlaw.com

*Local Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document has been served on this 21st day of

July, 2021, via the Court's ECF system on the following:

Tasha C. Blakney
Eldridge & Blakney PC
400 West Church Avenue, Suite 101
Knoxville, TN 37902
865-544-2010
Fax: 865-544-2015
Email: tblakney@eblaw.us

Zachary R. Walden
Eldridge & Blakney PC
400 West Church Avenue, Suite 101
Knoxville, TN 37902
865-544-2010
Email: zwalden@eblaw.us

*Counsel for Defendants*

*/s/Michael J. Sullivan*
Michael J. Sullivan

21