UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

R.S. LOGISTICAL SOLUTIONS, LTD,

    Plaintiff,

    v.

JANUS GLOBAL OPERATIONS, LLC, and
CALIBURN INTERNATIONAL, LLC,

    Defendants.

Case No. 3:21-cv-00178-DCLC-JEM

## PLAINTIFF'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER

Plaintiff R.S. Logistical Solutions, LTD ("RSLS" or "Plaintiff") respectfully submits its Opposition to the Motion for Protective Order ("Motion") filed by Defendants Janus Global Operations, LLC ("Janus") and Caliburn International, LLC ("Caliburn") (collectively, "Defendants"). For the following reasons, the Motion should be denied.

## INTRODUCTION

Defendants' Motion is predicated on the fallacy that a party must obtain permission from a nonparty contractual counterpart before complying with its discovery obligations as a litigant in a federal court. In the context of litigation in this Court, Defendants' contractual nondisclosure obligations to nonparties are subordinate to and eclipsed by the disclosure and discovery requirements of the Federal Rules of Civil Procedure. Rules 26 and 34 impose well-defined duties of disclosure, cooperation and candor that Defendants seek to evade with a Motion that is patently defective under the Rules and applicable caselaw.

1

Defendants' Motion asks this Court to suspend the normal function of Rules 26 and 34 and force Plaintiff to *seek permission from a non-party* to obtain discovery of undisputedly relevant communications in Defendants' admitted possession.  In an absurd inversion of Rule 26, Defendants are seeking an order forcing Plaintiff to attempt to obtain discovery of *Defendants' own records* from some other source that is less convenient, more burdensome, and more expensive. Once the hang-wringing and histrionics are set aside, Defendants' Motion and accompanying Declaration comprise a factually hollow, legally aimless request for relief that fails to establish good cause and does not meet the burden required for entry of a protective order.

### Background

The genesis of this case is a prime contract between the Department of State ("DoS") and Janus which Janus, with Caliburn's assistance and oversight, competed for, won, and successfully defended in December 2019.  (*See* Complaint, ECF No. 1 ("Compl.") ¶¶ 12– 33).  At each stage— bidding, winning and defending—Plaintiff's role as a key subcontractor in Janus' performance of the DoS contract was material to the outcome, and, accordingly, Janus and RSLS executed a subcontract as expected in January 2020.  (*Id*. ¶¶ 37–46; ECF No. 21-1).

The subcontract, a Master Subcontract Agreement ("MSA"), acknowledged DoS's role and rights as the ultimate customer and included a provision in which the parties' obligations are conditioned on certain DoS actions. (*See* MSA § 12, ECF No. 21-1).  The MSA did not permit Janus to simply terminate without cause/for convenience unless certain conditions were met, and the creation of such conditions depended heavily on the actions of DoS.  (*See* Compl. ¶¶ 43, 61– 63; MSA § 12).

Under the MSA, Janus agreed not to terminate "for convenience" unless Janus's customer DoS did so or to "avoid a termination for default from [DoS] in which case the Parties agree[d] to

2

discussions at Senior Management levels prior to [Janus's] issuing [RSLS] a Termination for Convenience." (*Id*. ¶ 43; MSA § 12).

RSLS alleges that the MSA's conditions for termination for convenience did not exist at the time that Janus began the process of repudiating the MSA, that both Janus and Caliburn knew the MSA's conditions were not satisfied, and that Caliburn over the course of four months proceeded to engineer circumstances that would provoke DoS to take action that could be used *ex post* to legitimize Janus's termination-for-convenience of the MSA. (Compl. ¶¶ 58–68, 74–77, 82–86, 88). Eventually, Caliburn represented to RSLS that DoS had taken action that would justify termination of the MSA for convenience but refused to provide RSLS with any documentation regarding DoS's purported action. (*Id*. ¶¶ 86–88).

It is beyond dispute that DoS's involvement—to whatever extent—was enormously consequential in shaping the events alleged in the Complaint as they unfolded and DoS's communications with Defendants are material to the legal ramifications of Defendants' actions vis-à-vis the MSA and RSLS.

## LAW & ARGUMENT

### 1. <u>Legal Requirements for Entry of Protective Order</u>

Rule 26 provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). Good cause for the issuance of a protective order is established with "specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on merely conclusory statements." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987). "The burden of establishing good cause for a protective order rests with the movant." *Id*.

3

"Because entry of a protective order is contrary to the basic policy in favor of broad discovery, the party that seeks a protective order has a heavy burden to make a strong showing why discovery should be denied." *Fausz v. NPAS, Inc.*, No. 3:15-CV-00145-CRS, 2017 WL 11483897, at *5 (W.D. Ky. Jan. 13, 2017) *objections overruled*, No. 3:15-CV-00145-CRS-DW, 2017 WL 1227943 (W.D. Ky. Mar. 31, 2017). "Good cause will not be shown merely because the disputed discovery may be inconvenient or expensive." *S. Fifth Towers, LLC v. Aspen Ins. UK, LTD*, No. 3:15-CV-151-CRS, 2016 WL 11200223, at *7 (W.D. Ky. Aug. 11, 2016) *objections overruled*, No. 3:15-CV-00151-CRS, 2016 WL 6594082 (W.D. Ky. Nov. 4, 2016).

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Maxchief Investments Ltd. v. Plastic Dev. Grp., LLC*, No. 3:16-CV-63, 2017 WL 710956, at *1 (E.D. Tenn. Feb. 22, 2017) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). "While District Courts have the discretion to issue protective orders, that discretion is limited by the careful dictates of Fed. R. Civ. P. 26 and 'is circumscribed by a long-established legal tradition' which values public access to court proceedings." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 227 (6th Cir. 1996) (quoting *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir. 1983), *cert. denied*, 465 U.S. 1100 (1984)).

## 2. Defendants' Motion Does Not Satisfy the Requirements for a Protective Order

### a. Defendants Have Not Met Their Burden under Rule 26(c) to Prove Good Cause by Articulating Specific Facts Showing a Clearly Defined and Serious Injury

Defendants' attempt to meet Rule 26's standard for good cause by describing a litany of potential catastrophes that might ensue if they were to produce documents "without government authorization". (*See*, *e.g.*, Motion at 2, 4, 6, 9–10). However, a closer look at Defendants' Motion

4

demonstrates that these predictions of doom are wholly speculative and conclusory and lack "specific facts showing clearly defined and serious injury resulting from the discovery sought." *Nix*, at 500.

Nowhere in their Motion papers do Defendants indicate they actually made a request to DoS to authorize anything. Defendants represent that they "did, in fact, contact DoS regarding RSLS's discovery requests," (Motion at 6), and describe the following as the extent of DoS's reaction: "DoS acknowledged the lawsuit and declined to take any action in response." (*Id*.)

If the totality of Defendants' actions was to "*contact* DoS *regarding* RSLS's discovery requests," and the totality of DoS's reaction was to "*acknowledge* the *lawsuit*", it would appear doubtful that Defendants ever communicated a request to DoS or had any substantive interactions with DoS regarding RSLS's requests. It is utterly meaningless that Defendants say "[t]he Contracting Officer did not provide permission to disclose their communications with DoS" when the immediately preceding record explicitly describes DoS's actions as limited to "acknowledge[ment]" of the suit, which logically excludes the possibility of a DoS Contracting Officer having an opportunity to even discuss RSLS's requests with Defendants, much less forbid Defendants from complying with their discovery obligations in this proceeding.

In sum, Defendants' Motion papers indicate that Defendants have had no substantive communications of any kind with DoS regarding RSLS's discovery requests, and, accordingly, Defendants have no idea what DoS's position is in regard to Defendants' production of responsive communications in this litigation. *See Johnson v. BAE Sys., Inc.*, 307 F.R.D. 220, 224 (D.D.C. 2013) ("An attorney or party has a duty, per Rule 26(g), to perform a reasonable inquiry to determine whether a discovery response is complete and accurate.").

5

**b. Objections Based on Confidentiality Are Not Sufficient to Demonstrate Good Case under Rule 26(c)**

Defendants express grave concerns regarding a discovery-caused breach of the "strict confidentiality" provisions in its contract with DoS, but in multiple ways this too falls short of "specific facts showing clearly defined and serious injury" that would result from the requested discovery.

First, as described above, Defendants present nothing to indicate that DoS takes any position—positive or negative—regarding the Defendants' production of their responsive communications with DoS in response to RSLS discovery requests. *See Pierson v. Indianapolis Power & Light Co.*, 205 F.R.D. 646, 647 (S.D. Ind. 2002) ("[C]haracterizing the records as those the disclosure of which could … injure the defendant's business is merely conclusory. … that the information 'could cause serious injury or damage to their business' is far too vague."). Defendants fail to explain why DoS (an agency long familiar with the FRCP and discovery in federal courts) would find Defendants' compliance with discovery disclosures in any way inappropriate, much less so egregiously offensive as to cause DoS to reconsider and potentially abandon all dealings with Defendants.[1]

---

[1] Indeed, discovery of DoS and agency communications is an unremarkable aspect of litigation involving subcontractors and contract modifications. *See Constructora Guzman, S.A. v. United States*, 145 Fed. Cl. 656, 660–61 (2019) (discovery needed to develop facts surrounding DoS contracting officer's intent and knowledge in issuing modifications to contract for renovation of embassy in Guyana); *Fox Logistics & Constr. Co. v. United State*s, 145 Fed. Cl. 236, 241 (2019) (subcontractor entitled to additional discovery on communications surrounding modification of prime contract for construction of Shindand Air Base in Afghanistan giving rise to subcontractor's third-party beneficiary claims).

6

Second, confidentiality "is not a basis upon which the Court may enter a Rule 26(c) protective order." *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 535 (D. Kan. 2003). A protective order based on confidentiality requires a showing that the information to be protected falls within a legitimate category of confidential information. *Velasquez v. Frontier Med. Inc.*, 229 F.R.D. 197, 200 (D.N.M. 2005) (objection based on confidentiality in Motion for Protective Order not sufficient to meet the threshold showing of good cause under Rule 26); *Equal Emp. Opportunity Comm'n v. Roswell Radio, Inc.*, No. CV 04-729 BB/LCS, 2005 WL 8163666, at *2 (D.N.M. Sept. 19, 2005) ("[A]n objection based on confidentiality, like one based on relevancy, fails to meet the Rule's threshold requirement of demonstrating good cause."); *Hassan v. United States*, No. C05-1066C, 2006 WL 681038, at *2 (W.D. Wash. Mar. 15, 2006) (government's general concerns of privacy insufficient to justify refusal to answer plaintiffs' discovery requests).

Third, Defendants' purported concern regarding adherence to the confidentiality provisions in its contract with DoS is, at best, self-serving and expedient. After all, it was Defendants who made DoS's decisions, directions, and communications the central explanation and justification for the MSA-breaching conduct giving rise to this litigation. To the extent Defendants have genuine, legitimate concerns regarding confidentiality, the solution is to propose and negotiate a protective order so that sensitive documents *can be produced* subject to court-approved safeguards. *See Covad Commc'ns Co. v. Revonet, Inc.*, 258 F.R.D. 5, 11 (D.D.C. 2009) ("Confidentiality is not a basis for withholding information in the ordinary course if it can be protected by a protective order[.]"); *First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-CV-2235-SHL-DKV, 2016 WL 5867268, at *11 (W.D. Tenn. Oct. 5, 2016) ("[C]onfidentiality is not a recognized basis for withholding discovery, even when such a confidentiality restriction is imposed by a U.S. agency.")

(internal quotes omitted); *Barre v. Obama*, 932 F. Supp. 2d 5, 10 (D.D.C. 2013) ("[T]he government does not have the unilateral authority to designate information as protected.").

### c. Defendants' References to *Touhy* Do Not Constitute Proper Objections

It has been Defendants' practice to conclude their improper "confidentiality" objections by recommending that RSLS seek responsive documents from DoS pursuant to *Touhy v. Ragen*. (*See* Tasha Blakney Letter dated March 10, 2022 (ECF No. 42-5) at 1) ("Our client has communicated with the Department of State regarding the production of these communications. Requests for these communications should be made to the United States Department of State pursuant to *Touhy v. Regan* [sic], 340 U.S. 462 (1951) and relevant Department of State regulations."). However, even if *Touhy* and DoS housekeeping regulations were somehow relevant,[2] it would not diminish the primacy of the discovery rules or the authority of this Court to enforce them.

Congress has delegated to the Judiciary the power to promulgate rules for controlling party discovery. 28 U.S.C. § 2072. The Judiciary implemented that delegation by promulgating the Federal Rules of Civil Procedure. At the same time, Congress delegated to the heads of executive departments the power to promulgate internal housekeeping regulations, *i.e.*, the Housekeeping Statute. 5 U.S.C. § 301. The Supreme Court has upheld that power. *Touhy ex rel. United States v. Ragen*, 340 U.S. 462 (1951). However, to Plaintiff's knowledge, no court has ever held, and no federal agency has ever claimed—including in this case—that an agency may control the rules of party discovery. *See In re Bankers Trust Co.*, 61 F.3d at 470 (stating that a federal agency cannot "deliberately disobey a court order, subpoena, or other judicial mechanism requiring the

---

[2] Plaintiff's arguments regarding *Touhy* are more fully set forth in its Memorandum in Support of Motion to Compel (ECF No. 42-1) at 8–13.

production of information" even when it has prescribed regulations that preclude it from disclosing such information).

Permitting Defendants to improperly invoke or hide behind DoS regulations here would mischaracterize the *Touhy* doctrine and distort the intent of the Housekeeping Statute. Allowing a government agency to determine what evidence is discoverable could create a significant separation of powers problem. *See Gulf Grp. Gen. Enters. Co. W.L.L. v. United States*, 98 Fed. Cl. 639, 647 (Fed. Cl. 2011). The judiciary oversees the admission of evidence at trial. *Id.* "[N]o executive official or agency can be given absolute authority to determine what documents in his possession" should be considered by the court. *Comm. for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 788, 794 (D.C. Cir. 1971); *see Menocal v. GEO Grp., Inc.*, No. 14-CV-02887-JLK, 2017 WL 4334000, at *4 (D. Colo. June 6, 2017) (refusing to authorize DHS to determine what evidence discoverable because doing so would undermine the role of the court).

Defendants are not the first government contractors to employ *Touhy* as a pretext for strategic helplessness in order to claim its "hands are tied" until it receives an agency's explicit permission to comply with basic discovery obligations. The analysis in *Menocal v. GEO Grp., Inc.* is both illustrative and instructive in this regard:

> The paramount question in ruling on the parties' Motions is whether [DHS contractor] GEO can decline to disclose or produce information based on the Department's *Touhy* regulations. GEO argues that, as the subpoenaed FBI agent in *Touhy* was a Department of Justice employee, it is a contractor and "employee" of the Department of Homeland Security and, thus, may properly refuse to provide discovery responses based on the regulations. It contends that if I order it to produce documents and information, it will be placed in a "no win" scenario: violating the Department's regulations or violating a court order. Mot. Protective Order 72 at 9, ECF No. 72. Plaintiffs, on the other hand, assert that, as a party to the litigation, GEO is beyond the reach of the *Touhy* regulations and cannot rely on them to circumvent its discovery obligations. They insist that finding otherwise would allow the Department to usurp the court's authority to control discovery, resulting in a separation of powers problem.

*3 Plaintiffs are unquestionably correct. Here, unlike in *Touhy* where the Department of Justice employee was not a party to the case, GEO, an "employee" of the Department of Homeland Security, is a party to the litigation. The Supreme Court in *Touhy* interpreted the Housekeeping Statute to allow government departments to prescribe regulations "centralizing determination as to whether subpoenas duces tecum will be willingly obeyed or challenged" when the department is *not* a party to the litigation. *See Touhy*, 340 U.S. at 468. The conspicuous and sensible purpose of the *Touhy* regulations is to protect an agency of government from unrestricted disclosure of official documents when that agency or its "employees" are *not* parties to the litigation. The purpose is not to create obstacles or shields from the normal rules of discovery when that agency or its "employees" are parties. In the latter case, the law requires them to be treated equally without special and predictably stilted advantage.

No. 14-CV-02887-JLK, 2017 WL 4334000, at *2–3 (D. Colo. June 6, 2017). The reasoning of

*Menocal* readily applies here.  In this case *Touhy* does not change the fact that Defendants are

subject to the same discovery obligations as any other litigant in this Court, including production

of relevant documents, based on the requirements of Rule 26 and 34 irrespective of their contrived

"hands tied" concerns.  The rules do not permit Defendants to make objections that seek to deflect

their discovery obligations to non-parties and force RSLS to incur the increased costs, delay and

inconvenience on such grounds.

### d.  The Potentially Burdensome Production of Relevant Documents Does Not Make Requested Discovery Disproportionate under Rule 26(b)(1)

Defendants' objections that RSLS's requests are overbroad, unduly burdensome and not

proportional do not remotely suffice to establish good cause for a protective order.  "[T]he party

resisting discovery … bears the burden to show that the discovery sought is disproportionate."

*Brown v. Tax Ease Lien Servicing, LLC*, No. 15-cv-208, 2016 WL 10788070, at *8 (W.D. Ky. Oct.

11, 2016). "Merely because production of otherwise relevant information or documents may

perhaps be burdensome in the view of the responding party does not make the requested discovery

automatically disproportionate for the purposes of Rule 26(b)(1)." *Id*. at *9.    Further

"[o]verbreadth … is not one of the grounds enumerated in Rule 26(c) that will support a request for protective order. While it is an objection that may be asserted in responding to a discovery request, it simply is not a basis upon which the Court may enter a Rule 26(c) protective order." *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 535 (D. Kan. 2003).

Defendants submit a Declaration from Caliburn's in-house counsel that provided raw numerical values of results from a search of Defendants' records, (Declaration of Kelly McIntyre dated May 25, 2022, ECF No. 49-7 ("McIntyre Decl.") ¶ 12), and cite those numbers to suggest that a staggering volume of records that must be searched and reviewed in order to produce documents responsive to RSLS's requests.  However, to date, Defendants have not proposed any narrowing of the requests and have shown no interest in conferring with RSLS to resolve these objections by rescoping the relevant time period, custodians, or search terms, other than to object entirely to their production.  A boilerplate objection to breadth is simply insufficient to warrant Court intervention, particularly given the relatively narrow period and number of custodians.

### e. Defendants' Conduct Suggests a Lack of Good Faith in Their Blanket Objections to Producing Communications with DoS

To date Defendants have never proposed a protective order for the production of DoS communications. To avoid disputes regarding production of documents involving non-party confidentiality concerns, "it is 'typical' for parties to use protective orders in order to move discovery along." *Smith v. FirstEnergy Corp.*, No. 2:20-CV-3755, 2021 WL 1940234, at *3 (S.D. Ohio May 14, 2021), citing *Ruiz-Bueno v. Scott*, No. 2:12-cv-0809, 2013 WL 6122399, at *2 (S.D. Ohio Nov. 21, 2013) (noting that protective orders are "the typical way for parties to handle the production of any type of ... commercially [sensitive] information.").

11

Defendants' failure to diligently seek and arrange for a protective order to ensure timely production of the DoS communications responsive to RSLS's requests—in accordance with Rule 34—has prejudiced RSLS's ability to conduct meaningful discovery and to prepare to address the merits of its claims. Additionally, RSLS "[has] been 'required to waste time, money, and effort in pursuit of cooperation' that [Defendant] is obligated to provide under both the Federal Rules and the Court's orders." *Gallina v. Wyandotte Police Dep't*, No. 4:07–CV–12640, 2008 WL 5090551, at *2 (E.D. Mich. November 26, 2008) (citation omitted). Despite several attempts by Plaintiff to meet-and-confer about these issues, Defendants have not budged on their stance or made any effort to proactively seek a solution using an appropriate protective order to address the purported concerns regarding DoS. Defendants' tactics have resulted only in delay—an outcome that increasingly seems to have been Defendants' objective all along.

## CONCLUSION

The relevance of the requested DoS communications is not disputed, and Defendants' Motion fails to provide any specific facts showing clearly defined and serious injury that would arise from the production of responsive communications. Defendants have provided little more than conclusory statements and sheer speculation about the potential repercussions of discussions it has never had with DoS, despite having received RSLS's requests over eights months ago. Defendants have not met their burden to demonstrate good cause for entry of a Protective Order and their Motion should be denied.

Respectfully submitted,

Dated: June 6, 2022

*/s/ Kimberly P. West*
Kimberly P. West (MA #635401) *pro hac vice*
Michael J. Sullivan (MA #487210) *pro hac vice*

12

Nathan P. Brennan (MN #389954) *pro hac vice*
ASHCROFT SULLIVAN, LLC
200 State Street, 7th Floor
Boston, MA 02109
P: 617-573-9400
msullivan@ashcroftlawfirm.com
kwest@ashcroftlawfirm.com
nbrennan@ashcroftlawfirm.com

Lawrence J. Laurenzi (TN Bar No. 9529)
Sarah E. Stuart (TN Bar No. 35329
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
P: 901-524-5000
llaurenzi@bpjlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document has been served on this 6th day of June, 2022, via the Court's ECF system on the following:

Tasha C. Blakney
Zachary R. Walden
Eldridge & Blakney PC
400 West Church Avenue, Suite 101
Knoxville, TN 37902
865-544-2010
Fax: 865-544-2015
Email: tblakney@eblaw.us; zwalden@eblaw.us

*Counsel for Defendants*

/s/Kimberly P. West
Kimberly P. West

13