UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| R.S. LOGISTICAL SOLUTIONS, LTD,<br><br>　　Plaintiff,<br><br>　　v.<br><br>JANUS GLOBAL OPERATIONS, LLC, and<br>CALIBURN INTERNATIONAL, LLC,<br><br>　　Defendants. | Case No. 3:21-cv-00178-DCLC-JEM |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL**

Defendants make multiple unavailing arguments in their Response in Opposition to Plaintiff's Motion to Compel, (ECF No. 50-1 ("Opp.")), most of which are made in Defendants' concurrent, equally defective Motion for Protective Order, (ECF No. 49), and all of which should be rejected by the Court.

First, Defendants argue that they are barred from producing the documents by a confidentiality clause in the Somalia Task Order with Department of State ("DoS"). (Opp. at 5–6). This argument is contrary to the Rules and case law.

Second, Defendants object that Plaintiff "has not made the requisite showing of relevance for much of the information" sought in the disputed requests. (Opp. at 7–8). However, even a casual perusal of the record, including the Complaint, the Court's January 28, 2022 Order (ECF No. 35), and documents already produced by Defendants, show the demonstrable relevance of Defendants' communications with DoS.

1

Third, Defendants attempt to use their already defective relevance objection as the foundation for disingenuous overbreadth and proportionality objections. (Opp. at 9–10). The result is a proportionality analysis that begins from an invalid starting point and ends by conceding that at least a portion of the requested documents are relevant. (*Id*. at 12).

Finally, Defendants also argue that Plaintiff's arguments in support of its Motion to Compel ("Motion") misunderstand the nature of Defendants' objections. (Opp. at 13–6). Any such misunderstanding is the result of Defendants' evasive responses and failure to engage in good faith to cooperatively resolve this dispute using the readily available solution of a conventional protective order and producing responsive documents accordingly. Defendants have repeatedly made references to *Touhy* in communications with Plaintiff; that Plaintiff's Motion preemptively addresses the inapplicability of *Touhy* to justify Defendant' failure to produce relevant documents only reinforces that Defendants are simply seeking to prevent important discovery in this case. Indeed, the totality of the record strongly suggests that Defendants are engaging in strategic helplessness—e.g., our "hands are tied", (Opp. at 14)—in order to delay the discovery process and stymie progress of this action.[1]

## I. THIRD-PARTY CONFIDENTIALITY AGREEMENTS DO NOT SUPERCEDE THE FEDERAL RULES

Defendants' primary argument is that the contract with DoS contractually prohibits them from producing the information sought by Plaintiff. (*See* Opp. at 2–6). This objection is specious and readily dispatched under the Rules and applicable caselaw. "[A] private non-disclosure

---

[1] Given the overlapping issues and arguments between the parties' respective discovery motions, Plaintiff incorporates the points and arguments made in its Opposition to Defendants' Motion for Protective Order dated June 6, 2022, ECF No. 52.

agreement cannot limit a court's ability to order discovery of relevant evidence." *O'Hara & Assocs., LLC v. Winzeler, Inc.*, No. 16-11708, 2017 WL 11423043, at *2 (E.D. Mich. Aug. 4, 2017). "As a general rule, confidentiality agreements will not stand as a barrier to discovery between two parties in litigation." *Shvartser v. Lekser*, 270 F. Supp. 3d 96, 98 (D.D.C. 2017) (internal quotes omitted). "[C]ourts routinely require the production of agreements covered by a confidentiality clause, reasoning that a party may not thwart the rules of discovery by an agreement with a third party and that any interest in confidentiality may be protected by a protective order." *Simplot Ab Retail Sub, Inc. v. N. Liberty Land, LLC*, No. 18-CV-4047-KEM, 2020 WL 13211640, at *1 (N.D. Iowa July 23, 2020); *United States v. Newman*, 531 F. Supp. 3d 181, 193 (D.D.C. 2021) ("[I]t is well established that confidentiality agreements are, as a general rule, *not* barriers to discovery.") (emphasis in original).

Defendants fail to provide any authority or examples showing why this Court should deviate from the typical process of handling discovery involving information subject to contractual nondisclosure obligations—namely, relevant confidential documents are produced by the party subject to a court-approved protective order. *See Simplot*, at *1 ("To the extent that communications between [defendant] and [non-party] are responsive to [plaintiff's] other, more targeted discovery requests, [defendant] may not rely on the confidentiality clause in refusing to produce them."). Understandably, Defendants provide no caselaw to support the argument that a party can merely invoke a confidentiality clause in a third-party contract as an objection to producing discovery. *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 922 (D. Nev. 2006) (recognizing "the unremarkable proposition that confidentiality agreements will not stand as a barrier to discovery between two parties in litigation"); *Diamond Resorts Int'l, Inc. v. Phillips*, No. 3:17-CV-01124, 2018 WL 3326814, at *2 (M.D. Tenn. Apr. 17, 2018) (quoting *Saini* and asserting

3

"[i]t is an 'unremarkable proposition,' however, 'that confidentiality agreements will not stand as a barrier to discovery between two parties in litigation.'").

Whatever limits the Somalia Task Order may impose on Defendants, the case law is clear any confidentiality obligations are subordinate to the Federal Rules and this Court's authority to enforce them, enter an appropriate protective order, and order the production of responsive documents. *Winfield v. City of New York*, 2018 WL 716013, at *16 (S.D.N.Y. Feb. 1, 2018) (citing *In Re Subpoena Duces Tecum Served on Bell Commn'cns Res., Inc.*, 1997 WL 10919, at *3 (S.D.N.Y. Jan. 13, 1997) (collecting cases that hold confidentiality agreements cannot serve as protection from discovery requests and observing that a contrary holding would "clearly impede the truth-seeking function of discovery in federal litigation, as all individuals and corporations could use confidentiality agreements to avoid discovery.").

## II. DEFENDANTS' RELEVANCE OBJECTION IS BASELESS AND FRIVOLOUS

Defendants assert that Plaintiff "has not made the requisite showing of relevance for much of the information" sought in the requests for Defendants' communications with DoS. (Opp. at 7). However, even a cursory review of the record in this case shows the demonstrable relevance of Defendants' communications with DoS. Such communications are referenced multiple times in the Complaint (*see* ECF No. 1 at ¶¶ 55, 63, 68, 74, 77, 82–86), in Defendants' Motion to Dismiss (*see* ECF No. 21 at 3–4, 6), in Defendants' Reply in Support of Motion to Dismiss (*see* ECF No. 26 at 1–3), and in the Court's Memorandum Opinion and Order dated January 28, 2022 (*see* ECF No. 35 at 4, 9–10).

Further, documents already produced by Defendants reference and reflect substantial communications with DoS regarding the secured housing services that RSLS was contracted to provide under the MSA. For example, Defendants produced a February 10, 2020 email from

4

Caliburn's Chief Operating Officer C.D. Moore to Thomas Heasley in which Moore states, "We need DOS to direct contractually a change — otherwise we are locked into proposed [RSLS MSA] solution (outside compound)." (*See* Declaration of Kimberly West dated June 10, 2022 ("West Decl.") ¶ 2, Ex. A). Defendants also produced a March 3, 2020 email from Thomas Heasley to C.D. Moore and William King (Caliburn General Counsel) in which Heasley states, "Attached are the proposed documents for today's discussion at 1030 [sic], and, with meeting edits, to be submitted to DoS today"; however, Defendants failed to produce the accompanying attachments. (West Decl. ¶ 3, Ex. B). An email thread dated March 12–13, 2020 with subject "FW Janus Response to Option B questions and Answers" shows five separate attachments, all of which were part of Defendants' written correspondence with DoS and all of which were withheld by Defendants in their production. (West Decl. ¶ 4, Ex. C). The production of a responsive emails without accompanying attachments is improper under Rule 34, which "governs the production of 'documents' and not portions of documents deemed relevant and responsive to a discovery request." *Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2011 WL 13078603, at *7 (S.D. Ohio Aug. 8, 2011). Implicit in the text of the rule is a right to inspect the entire document as parties are required to "produce documents as they are kept in the usual course of business." *Id*. (citing Fed. R. Civ. P. 34(b)(2)(E)(ii)). The omission of attachments in the several email examples submitted herewith do not comport with Defendants' obligations under the Rules.

Defendants have already produced multiple emails that specifically reference communications with DoS that are recognized as implicating Defendants' legal obligations to RSLS under the MSA. When combined with the prominent role of DoS communications in the pleadings and filings of this case as described above, Defendants' relevance objections are frivolous and disingenuous. Moreover, to allow Defendants' to continue their *a la carte*

5

withholding of responsive DoS communications improperly gives the Defendants sole discretion of whether a given document or content comprises or falls within the scope of "DoS communications" and provides no accountability measures to ensure all relevant documents, whether favorable or adverse to Defendants, are being produced. The relevance and discoverability of the requested DoS communications is obvious, and RSLS is entitled to obtain discovery of such communications without further delay. *Farley v. Farley*, 952 F. Supp. 1232, 1239 (M.D. Tenn. 1997) (It is "of paramount importance that litigants be accorded the authority to seek out relevant evidence that they have been granted by the federal rules.").

### III.   DEFENDANTS' OVERBREADTH AND PROPORTIONALITY OBJECTIONS ARE DISINGENUOUS AND IMPROPER

Defendants complain that RSLS's requests are overbroad and even "troubling" because two requests seek "all documents" regarding a relevant topic. (Opp. at 9). To date, Defendants have not proposed any narrowing of the requests, have never conferred with RSLS regarding an alternative approach to responding of the requests, and now make arguments that seem oblivious to their own responsibilities to use the self-help available under Rule 26 and via genuine meet-and-confer efforts. *See Cahoo v. SAS Inst. Inc.*, No. 17-10657, 2019 WL 7971900, at *6 (E.D. Mich. June 25, 2019) ("It is sensible that the entity that possesses and stores the sought-after data would be in the better position to begin the negotiations by proposing a range of custodians and search terms. Once the plaintiffs see the proposal, they can either agree with the scope or propose additional terms or custodians.").

Defendants' recent filing of a Declaration from Caliburn's in-house counsel regarding the volume of results from a search term inquiry is the first substantive, quantitative information Defendants have provided in explaining the purported burden involved in producing responsive

6

documents. (*See* ECF No. 49-7 ¶ 12). Such concerns could have been specifically raised, discussed and likely resolved months ago if, in fact, Defendants had a good faith belief that producing responsive discovery would pose an undue burden. *L-3 Communications Corp. v. Sparton Corp.*, 313 F.R.D. 661, 670 (M.D. Fla. 2015) (noting that counsel have a duty "to confer in good faith with opposing counsel in an effort to resolve or at least narrow the scope of a discovery dispute before bringing the dispute before the Court.").

Defendants seem to forget they are each a party to this action, and there is no more fundamental a discovery principle, codified in the Federal Rules, than the principle that a party must produce relevant and responsive documents requested by any other party. *See* Fed. R. Civ. P. 34. Rather than continuing the exercise of strategic helplessness and lamenting the inconvenience of participating in discovery, Defendants should simply request or propose a more narrowly tailored revision of Plaintiff's requests, determine the true volume of potentially responsive documents, and get on with the business of satisfying their discovery obligations so that this litigation can move forward. *See Dunn v. Midwestern Indemnity*, 88 F.R.D. 191, 198 (S.D. Ohio, Sept. 26, 1980) (party cannot avoid responding to a discovery request merely by alleging that it would be time-consuming to ultimately produce the requested information).

## IV. A CONVENTIONAL PROTECTIVE ORDER WOULD READILY ADDRESS THE DEFENDANTS' CONFIDENTIALITY CONCERNS

Since first receiving Plaintiff's discovery requests over eight months ago, in September 2021, Defendants' actions have been consistent with a deliberate effort to avoid and delay for as long as possible their discovery obligations in this action. To the extent Defendants have a genuine need to protect confidential third-party communications, a conventional protective order would adequately address any sensitive information contained in documents produced pursuant to

7

discovery. That Defendants are instead seeking a protective order to be relieved of their obligations *in toto*, (*see* ECF No. 49), suggests that the parties' current discovery motions are the product of a deliberate delay strategy by Defendants that the Court need not indulge any further. Discovery is supposed to proceed with minimal involvement of the Court; it is not a "court's function to drag a party kicking and screaming through discovery." *Fed. Deposit Ins. Corp. v. Butcher*, 116 F.R.D. 196, 203 (E.D. Tenn. 1986) (internal quotes omitted), *aff'd*, 116 F.R.D. 203 (E.D. Tenn. 1987).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order compelling Defendants to produce without delay the requested documents and information responsive to Plaintiff's Document Request Nos. 1, 2, 3, 11 and 17 and Plaintiff's Interrogatory Nos. 1, 2 and 10.

Respectfully submitted,

Dated: June 10, 2022

*/s/ Kimberly P. West*
Kimberly P. West (MA #635401) *pro hac vice*
Michael J. Sullivan (MA #487210) *pro hac vice*
Nathan P. Brennan (MN #389954) *pro hac vice*
ASHCROFT SULLIVAN, LLC
200 State Street, 7th Floor
Boston, MA 02109
P: 617-573-9400
kwest@ashcroftlawfirm.com
msullivan@ashcroftlawfirm.com
nbrennan@ashcroftlawfirm.com

Lawrence J. Laurenzi (TN Bar No. 9529)
Sarah E. Stuart (TN Bar No. 35329
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
P: 901-524-5000

8

llaurenzi@bpjlaw.com
sstuart@bpjlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document has been served on this 10th day of June, 2022, via the Court's ECF system on the following:

Tasha C. Blakney
Zachary R. Walden
Eldridge & Blakney PC
400 West Church Avenue, Suite 101
Knoxville, TN 37902
865-544-2010
Fax: 865-544-2015
Email: tblakney@eblaw.us; zwalden@eblaw.us

*Counsel for Defendants*

                                          */s/ Kimberly P. West*
                                          Kimberly P. West