UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

R.S. LOGISTICAL SOLUTIONS, LTD,

    Plaintiff,

v.

JANUS GLOBAL OPERATIONS, LLC, and
CALIBURN INTERNATIONAL, LLC,

    Defendants.

Case No. 3:21-cv-00178-DCLC-JEM

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**

COMES NOW Plaintiff R.S. Logistical Services, Ltd ("RSLS"), by and through its undersigned counsel and pursuant to Rules 26, 34, and 37 of the Federal Rules of Civil Procedure, and Local Rules 7.1 and 37.2, respectfully submits this Memorandum in Support of Motion to Compel Defendants Janus Global Operations, LLC ("Janus") and Caliburn International, LLC ("Caliburn") (collectively, "Defendants") to produce documents requested by RSLS and subject to the Court's Order dated August 26, 2022, (ECF No. 65), granting RSLS's Motion to Compel, (ECF No. 42), and denying Defendants' Motion for Protective Order, (ECF No. 49).

*Introduction*

Defendants failed to comply with the Court's August 26 Order by disregarding the Court's instructions for the production of DOS documents—specifically, the 30-day timetable to make the production following entry of the Protective Order and the 30-day timetable for advising DOS of the Court's Order. Defendants further disregarded the evident intent of the August 26 Order in twice proposing new production dates—and twice obtaining RSLS's assent—when at the time Defendants proposed the extension dates *they knew that DOS had not been even advised of the*

*Court's Order*, and that the likelihood of producing the documents was virtually nonexistent. Consequently, RSLS requests that the Court order Defendants to comply with its August 26 Order and produce the DOS documents without delay and award RSLS its attorneys' fees incurred in bringing this Motion, pursuant to Federal Rules of Civil Procedure 37(a)(5)(A) and 37(b)(2)(C).

1. **The Parties' Discovery Motions and the Court's Order**

On May 25, 2022, RLSL filed a motion to compel Defendants to produce documents responsive to discovery requests seeking communications between Defendants and the Department of State ("DOS"). (ECF No. 42). On June 1, 2022, Defendants filed a motion requesting that the Court enter a protective order to relieve them of the obligation to produce documents and communications to/from the DOS. (ECF No. 49).

The parties submitted briefing on their respective motions, in which Defendants contended that producing responsive documents would violate their confidentiality obligations to DOS and RSLS argued that Defendants' confidentiality concerns were subordinate to their discovery obligations under the rules. (*See generally* ECF Nos. 42, 49, 2, 53, 57, 59).

The August 26 Order. On August 26, 2022, the Court issued its Order, granting in part RSLS's motion to compel and denying Defendants' motion for protective order ("Order"). (ECF No. 65 at 6). The Court agreed with RSLS's argument that "confidentiality restrictions in contracts do not override the Federal Rules of Civil Procedure," (*id*. at 7), and made several associated findings.

The Court found that "the confidentiality provision in Defendants' contract with the DOS does not preclude the production of non-privileged communications and documents to/from the DOS that are relevant and proportionate to the needs of the case", (*id*. at 10), and that "Defendants'

communications to/from the DOS regarding Plaintiff's services are relevant in this matter." (*Id*. at 13).

The Court's Order recounted the concerns asserted in Defendants' briefs that producing responsive documents would violate their confidentiality obligations to DOS, resulting in "serious financial and reputation risks", including the threat of losing a $61 million Task Order and being "competitively harmed by jeopardizing other existing DOS contracts, and impair[ing] their ability to seek future government contracts." (ECF No. 65 at 6–7). The Court acknowledged Defendants' concerns "that production could affect its reputation and ongoing relationship with the DOS", but concluded "at this point, Defendants' concerns are speculative", (*id*. at 11), and found that "Defendants' concerns are outweighed by the importance of communications and documents to/from the DOS to this litigation." (*Id*.).

<u>Two Mandates</u>. The Court's Order concluded with two mandates. The first directed the parties to confer and mutually address overbreadth and the narrowing of certain of RSLS's requests ("Narrowing Mandate"):

> To the extent Defendants have objected to Plaintiff's discovery requests as overly broad …, the Court **ORDERS** the parties to participate in a meet and confer **within fourteen (14) days** to discuss the specific documents Plaintiff seeks in response to the discovery requests and what appropriate parameters can be put into place to avoid undue expense and burden.

(*Id*. at 15).

The second mandate directed Defendants to produce the requested documents according to a specific timetable ("30-Day Mandate"):

> To the extent Defendants have objected solely based on the confidentiality provision …, the Court **ORDERS** Defendants to produce the requested documents within **thirty (30) days** of entry of the protective order[.][7]

(*Id*.).  In setting entry of the protective order as the trigger for the 30-day production deadline, the Court provided explicit guidance regarding its expectations for the 30-Day Mandate.  The Court's expectations for the 30-Day Mandate were further clarified in its footnote responding to Defendants' previous request that "DOS be afforded an opportunity to be heard concerning any documents Defendants may identify for production." (*Id*. at 15 n.7).  The Court again provided Defendants with specific instructions for accommodating their DOS-related concerns and a definite timetable to act upon such concerns also triggered by entry of the protective order:

> Under the circumstances of this case, the Court finds thirty (30) days from entry of the protective order sufficient time to advise the DOS of the Court's ruling and for the DOS to be heard on any documents Defendants identify for production. To the extent thirty (30) days is insufficient, Defendants may seek leave for additional time but must meet and confer with Plaintiff prior to seeking an extension.

ECF No. 65 at 15 n.7.

<u>Entry of Protective Order</u>.  On September 9, 2022, the Court entered the parties' Stipulated Protective Order. (ECF No. 70), thus triggering the 30-day timetable and making October 10, 2022 the deadline for Defendants to comply with the 30-Day Mandate.

**2. Parties Follow the Narrowing Mandate; RSLS Agrees to Extend Deadline**

The parties began conferring to narrow the scope of RSLS's discovery requests as directed per the Narrowing Mandate in the Court's Order, but decided to pause these efforts to focus on mediation scheduled for September 15, 2022.  The parties informed the Court of the mediation and their agreement to "certain slight adjustments to the Court's timetable for production as articulated in the August 26 Order." (ECF No. 69 at 1). On September 9 the Court issued an Order finding "good cause to modify the deadline for Defendants to produce the discovery as set forth in the August 26 Order so that the parties may focus their efforts on [mediation]" and directing the parties

to update the Court by September 22 regarding the outcome of the mediation and "Defendants' new timetable to produce discovery as articulated in the August 26 Order." (ECF No. 71 at 2).

<u>Parties Agree to October 14 Production Date</u>. On September 22, 2022, the parties filed a letter update as directed, informing the Court that the mediation was unsuccessful and that the parties had conferred to narrow the scope of RSLS's discovery requests and agreed "that Defendants will complete by October 14, 2022 their production of the documents required by the August 26 Order.[1]" (ECF No. 72 at 1). The parties' letter specifically referenced footnote 7 in the Court's Order, which provided that Defendants could, if necessary, request an extension of time to complete their production, and stating that "[t]he parties agree that Defendants should retain that right, although Defendants will strive to complete their production as efficiently as possible." (ECF No. 72 at 1 n.1). On September 27, 2022, the Court issued an Order that modified case deadlines for the close of discovery, dispositive and pre-trial motions, and trial, but did not modify—or even mention—the timetable for Defendants' document production ordered on August 26. (ECF No. 75).

<u>Narrowing Mandate Completed; RSLS Agrees to October 28 Production Date</u>. Following the mediation, on September 21, the parties resumed their efforts to narrow discovery requests and reached agreement on the final issues on October 6, thus completing the Narrowing Mandate. At the same time, Defendants indicated that they had not yet *started* their review, and advised that the agreed-upon October 14 production date was likely not feasible:

> These final negotiation points have delayed the start of our review, which makes it far less likely that we'll be able to complete that review and produce by 10/14 (given the volume of documents for review).

(Alex Hassid email dated October 6, 2022 in email thread dated September 29 – October 12, 2022, submitted herewith as **Exhibit A** ("Ex. A")). The same day, October 6, RSLS's counsel responded

that Defendants' production was expected on the agreed-upon October 14 date unless the court determined otherwise; Defendants' counsel replied by asserting that RSLS had delayed the narrowing negotiations and therefore Defendants would be unable to produce the DOS documents by October 14. (Ex. A, Alex Hassid email dated October 6, 2022).

On October 10, Defendants' counsel proposed a new production date of October 28, and sought RSLS's agreement on the new date:

> We are anticipating the ability to produce by October 28. Of course, we'll produce earlier if we're able and will, likewise, advise if that anticipated timeline proves unrealistic. Please let us know if we may agree to a target date of October 28.

(Ex. A, Tasha Blakney email dated October 10, 2022). RSLS responded the following day and expressed openness to the October 28 date of production, provided it was a genuine proposal:

> We can agree to the target date of Oct 28 only assuming if Oct 28 is realistic. I assume you have a good sense already of what you have to look through or you would not have picked Oct 28?

(Ex. A, Kim West email dated October 11, 2022). Defendants' counsel promptly responded, "You are correct. We believe October 28 is a realistic expectation." (Ex. A, Tasha Blakney email dated October 11, 2022). The following day, October 12, RSLS agreed to Defendants' proposed production date of October 28. (Ex. A, Kim West email dated October 12, 2022).

At no time in the interactions described above did Defendants' mention or in any way indicate that they considered the parties' negotiations to include completely disregarding the Court's directions in the 30-Day Mandate.

### 3. RSLS Learns That Defendants Disregarded the 30-Day Mandate

The day before the production deadline of October 28, Defendants' counsel called undersigned counsel and indicated that an attorney for DOS had contacted Defendants via email, requesting a copy of the Court's Order and indicating that the matter was currently being reviewed

by DOS. (Kim West email dated October 28, 2022 in email thread dated October 28 – November 1, 2022, submitted herewith as **Exhibit B**). On the morning of October 28, undersigned counsel for RSLS emailed Defendants' counsel, requesting confirmation on the status of the production:

> Per our agreement, the DOS documents are to be produced today. While I appreciate your apprising us of the communications between your client and DOS, they do not change your clients' Court-ordered production obligations under our agreement. Please let me know by 5:00 p.m. if you will produce the documents today.

(*Id*.). Defendants' counsel responded several hours later, sharing Defendants' view of what the Court intended in its Order and stating that Defendants would not make a production because DOS was reviewing the Order:

> We understand full well Judge McCook's order concerning our production and our separate agreement to extend that deadline based on the parties' efforts to narrow the scope of the requests at issue. With respect to Judge McCook's order, it explicitly acknowledged that DoS might need to be heard before the Defendants make their production, and that extending the production deadline might be necessary in that event. Here, as I understand Tasha explained to you, DoS contacted our client to indicate the issue of our production is undergoing legal review by the agency and that an answer would be forthcoming. <u>If Defendants produce documents before DoS determines how it will proceed, we could moot DoS's effort to challenge production and protect its documents</u>. <u>That is plainly not what Judge McCook intended</u>.
>
> In answer to your question, <u>Defendants cannot produce today because DoS is presently reviewing the order and related documents, and whether DoS will allow Defendants to produce the documents at issue</u>. <u>If it does not, then we agree that DoS will need to make an application to the Court to address the issue</u>. In the interim, I understood based on your phone call with Tasha that you proposed a joint submission to alert the Court to what is going on, and that you had asked us to respond this afternoon as to whether we would join. I'm not sure what changed since you spoke to her, but our response would have been to suggest that we give DoS a few more days to sort through this issue. We have no objection conceptually to jointly filing a status update with the Court but think it is in the parties' best interests to wait until at least the middle of next week before doing so. <u>We are concerned that challenging DoS now or trying to force it to respond before it is ready could be perceived as antagonistic, and potentially counter-productive</u>.

(Ex. B, Alex Hassid email dated October 28, 2022). In a response sent later that day, undersigned counsel for RSLS identified the issue that is at the core of the instant Motion:

> It appears that DOS was not timely advised of the Court's Order and is unaware that the window for DOS to be heard closed on Oct 10 — 30 days from entry of the protective order on Sep 9.
>
> * * *
>
> RSLS never agreed to delay the timetable set by Judge McCook's Order for DOS to be advised and heard. Instead your clients appear to have unilaterally granted themselves an extension of their obligations to advise DOS, in disregard of Judge McCook's instructions. See Aug 26 Order at 15 fn 7 ("To the extent thirty (30) days is insufficient, Defendants may seek leave for additional time but must meet and confer with Plaintiff prior to seeking an extension").

(Ex. B, Kim West email dated October 28, 2022).

<u>DOS Not Informed of the Court's Order Until October 19</u>. On October 31 counsel for the parties met and conferred by phone, during which Defendants' counsel indicated that DOS had first been advised of the Court's Order at some point in October. On November 1, Defendants' counsel confirmed that "our client advised DOS of the Court's order on October 19, including transmitting a copy of the order and the so-ordered stipulated protective order." (Ex. B, Alex Hassid email dated November 1, 2022).

**4. Defendants Failed to Abide by the 30-Day Mandate in the Court's August 26 Order**

The Court's Order provided Defendants with a clear timetable for the 30-Day Mandate, finding "thirty (30) days from entry of the protective order sufficient time to advise the DOS of the Court's ruling and for the DOS to be heard on any documents Defendants identify for production." (ECF No. 65 at 15 fn. 7). When the Protective Order was entered on September 9, (ECF No. 70), Defendants were aware that it triggered the 30-day timetable provided in the Order and made October 10 the deadline for DOS to be advised and heard from regarding Defendants' Court-ordered production.

After multiple interactions and negotiations with RSLS, resulting in several joint submissions to this Court, on November 1 and only after being pressed by RSLS did Defendants reveal that DOS was not advised of the Court's Order until October 19, well after the window for

DOS to be *advised and heard* closed on October 10 — 30 days from entry of the protective order on September 9.

5. **Defendants Were Not Candid in Their Negotiations with RSLS**

Defendants have suggested that RSLS delayed the parties' narrowing of discovery requests and, on this basis, sought and obtained RSLS's agreement to extend the production deadline twice, first to October 14 and then to October 28. At no point in those negotiations did Defendants inform RSLS that DOS was not even advised of the Court's Order within 30 days of the September 9 entry of the Protective Order. Defendants' obtained RSLS's agreement to extend the production deadline based on representations regarding the narrowing of several requests and a purportedly voluminous document review process. Prior to November 1, RSLS believed that Defendants were sincere in proposing the October 14 and 28 productions dates because they were "realistic". But RSLS now knows that Defendants' proposed those dates knowing they were never going to be honored, because Defendants had not even advised DOS of the Order and had no intention of producing anything unless "allowed" by DOS.

Even now, Defendants appear to be operating under a self-granted stay of the Court's Order and remain indifferent to the Court's instructions and 30 days "from the entry of the protective order" timetable that Defendants were given to accommodate their DOS-related concerns. The practical impact of Defendants' actions for RSLS's discovery planning and the Court's case schedule are unclear; Defendants' counsel has indicated that the production comprises 10,000 documents, and Defendants have indicated they intend to submit to DOS's request, if made, to complete its own review of the documents before DOS decides whether to "allow" Defendants to produce the documents as ordered by the Court. In that scenario, a *genuine* realistic production date may not arrive until December. RSLS does not believe the Court's Order can be reasonably

read to authorize such a scenario; at the very least, Defendants should have sought clarification before deviating from the Court's instructions and timetable regarding DOS as written.

In addition to the disregard shown toward the Court's Order, Defendants' lack of candor has created significant prejudice to RSLS. RSLS expended considerable resources to pursue its right to obtain discovery as is its right under the rules, submitting multiple briefs in motion practice during May and June. RSLS postponed and refrained from scheduling depositions during the pendency of the parties' discovery motions, and after obtaining a favorable decision on August 26, RSLS was eager to receive the document production ordered by the Court, schedule depositions for the 5–7 key witnesses, and continue litigating its claims per the case schedule set by the Court.

RSLS, as ordered, willing conferred with Defendants to narrow several of its discovery requests. And in the course of complying with the Narrowing Mandate, RSLS in good faith agreed twice to extend the production date. (*See* Exs. A and B). RSLS never agreed to delay the timetable set by the Court's Order for DOS to be advised and heard. Now, however, in light of Defendants' unilateral and apparently indefinite extension of the deadline for the production ordered by the Court, RSLS is uncertain as to whether it actually succeeded in obtaining any timely, enforceable relief in the Court's August 26 Order.

6. **The Court Should Order Immediate Compliance with Its August 26 Order and Impose Appropriate Sanctions**

"The Court has both express power, under Federal Rule of Civil Procedure 37, and inherent power to impose sanctions for bad faith conduct during discovery." *Clark Const. Grp., Inc. v. City of Memphis*, 229 F.R.D. 131, 137 (W.D. Tenn. 2005). "The Federal Rules of Civil Procedure provide that if a party fails to abide by a court order to provide discovery, the court 'may issue further just orders' including the imposition of any of the sanctions listed in Rule 37(b)(2)(A)(i)-(vii), among which are … rendering a judgment by default against the disobedient party." *Gray*

*Cas. & Sur. Co. v. Holton*, No. 09-2840AV, 2011 WL 679930, at *1 (W.D. Tenn. Jan. 18, 2011), *report and recommendation adopted*, No. 09-CV-02840-STA-DKV, 2011 WL 549862 (W.D. Tenn. Feb. 9, 2011). "In addition to those sanctions, the court can treat the failure of the disobedient party to obey the court's order as a contempt of court." *Id*. (citing Fed. R. Civ. P. 37(b)(2)(A)(vii)).

The Court may also impose sanctions based on its inherent authority. *Clark Const.*, at 138. A court's inherent power "is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. at 137–138 (W.D. Tenn. 2005) (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31 (1962)). This inherent power includes the Court's "power to control and supervise its own proceedings. *Id*.

Defendants failed to comply with the plain language of the Court's Order by disregarding the Court's directions for the production of DOS documents, specifically, the 30-day timetable to make the production following entry of the Protective Order and the 30-day timetable for advising DOS of the Court's Order. Defendants further disregarded the evident intent of the Order in twice proposing new production dates—and twice obtaining RSLS's assent—when at the time Defendants proposed the extension dates *they knew that DOS had not been even advised of the Court's Order*, and that the likelihood of producing the documents was virtually nonexistent.

The Court's 30-Day Mandate provided unambiguous direction that was predicated on the occurrence of an unmistakable, definitive event—the entry of the Protective Order—which happened September 9. The Court's instructions clearly establish the importance of the Protective Order entry date as central to the relief granted in the Order. However, Defendants chose to construe the Protective Order entry date as an entirely optional aspect of the Court's 30-Day

Mandate, one that Defendants could unilaterally set aside and replace with a new future date after Defendants deemed RSLS's requests to be sufficiently narrowed.

The Court's Order does not condition Defendants' compliance with the 30-Day Mandate upon the parties' completion of the Narrowing Mandate. And even if the Narrowing Mandate ultimately resulted in reducing the number of documents relevant to DOS's 30-day window to be advised and heard, the Order does not qualify its instructions regarding the 30-Day Mandate or make its Protective Order-triggered timetable subordinate to the Narrowing Mandate. That Defendants would read such significant qualifications into the Order and spend two months operating under a patently strained interpretation of the Order, without bothering to consult with RSLS or seek clarification from the Court, suggests that Defendants remain unpersuaded that the Rules of Civil Procedure and this Court's orders are truly superior to DOS's purported interests in whether to "allow" Defendants to produce documents as directed. (*See* ECF No. 65 (citing W.D. Tenn. decision holding "that a government agency could not override the application of the Federal Rules and prevent production of documents otherwise required under Rule 34" and finding "that the confidentiality provision in Defendants' contract with the DOS does not preclude the production of non-privileged communications and documents to/from the DOS[.]").

The Order gave Defendants 30 days from entry of the Protective Order on September 9 to produce the documents and for DOS to be advised and heard. That 30-day window expired on October 10 without DOS having even been advised of the August 26 Order. Defendants finally informed DOS of the Order on October 19. As of the filing of the instant Motion, 16 days have passed and Defendants do not know DOS's position on the Court's Order, do not know when the matter will be presented to the relevant decision-makers at DOS, do not know whether DOS wants to review any/some/all of the 10,000 document production, do not know DOS's preferences for

receiving/reviewing document productions, and Defendants cannot provide any semblance of a timetable for making the production ordered on August 26. (*See* Declaration of Kim West dated November 4, 2022, submitted herewith as **Exhibit C**).[1]

### 7. RSLS Is Entitled to Fees under Rule 37(a)(5)(A) and 37(b)(2)(C)

If a motion to compel under Rule 37(a)(3)(A) is granted, the court must require the offending party to pay the movant's reasonable expenses. Fed. R. Civ. P. 37(a)(5)(A). The Court has already granted such a motion in its August 26 Order, (ECF No. 65), but Defendants have failed to abide by the Order, thus necessitating the instant Motion. Under Rule 37(a)(3)(A), sanctions for disobedience of a discovery order include, *inter alia*, an order that "the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(3)(A). Defendants' failure to abide by the 30-day timetable for the document production and for advising DOS, and failure to consult with RSLS or seek clarification from the Court before unilaterally and significantly delaying discovery, was not substantially justified.

### *Conclusion*

For the foregoing reasons, RSLS respectfully requests that the Court grant its Motion, ordering Defendants to produce the documents subject to the August 26 Order without delay and awarding RSLS its attorneys' fees incurred in bringing the instant motion.

---

[1] It is also difficult to reconcile Defendants' delay in advising DOS of the Court's Order with their previous filings emphasizing their concerns with maintaining a good relationship with DOS, (*e.g.*, ECF No. 49-7 ¶ 9), and their insistence that DOS be afforded the opportunity to review the production. (ECF No. 49 at 14). That Defendants' failed to inform DOS of the Court's 30-day timetable until well after it had lapsed seems inimical to their purported concern that DOS be given an opportunity to protect its interests in the document production.

Respectfully submitted,

Dated: November 4, 2022

/s/ *Kimberly P. West*
Kimberly West (MA #635401) *pro hac*
Michael J. Sullivan (MA #487210) *pro hac*
Nathan P. Brennan (MN #389954) *pro hac*
**ASHCROFT SULLIVAN, LLC**
200 State Street, 7th Floor
Boston, MA 02109
P: 617-573-9400
kwest@ashcroftlawfirm.com
msullivan@ashcroftlawfirm.com
nbrennan@ashcroftlawfirm.com

*Counsel for Plaintiff*

Lawrence J. Laurenzi (TN Bar No. 9529)
Sarah E. Stuart (TN Bar No. 35329)
**BURCH, PORTER & JOHNSON, PLLC**
130 North Court Avenue
Memphis, TN 38103
P: 901-524-5000
llaurenzi@bpjlaw.com
sstuart@bpjlaw.com

*Local Counsel for Plaintiff*

## RULE 37 CERTIFICATE OF CONSULTATION

Pursuant to Fed. R. Civ. P. 37(a)(1), I hereby certify that counsel for RSLS has in good faith conferred with counsel for Defendants by phone and email in an effort to obtain the above requested relief without Court action.

/s/ *Kimberly P. West*
Kimberly West

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document has been served on counsel of record on this 4th day of November 2022, via the Court's ECF system.

*/s/Kimberly P. West*
Kimberly P. West
