UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

R.S. LOGISTICAL SOLUTIONS LTD,           :
                                         :
            Plaintiff,                   :
                                         :
v.                                       :  Case No. 3:21-CV-178-DCLC-JEM
                                         :
JANUS GLOBAL OPERATIONS, LLC, and        :
CALIBURN INTERNATIONAL, LLC,             :
                                         :
            Defendants.                  :

PLAINTIFF'S OPPOSITION TO
DEFENDANT JANUS GLOBAL OPERATIONS LLC
AND CALIBURN INTERNATIONAL, LLC'S
PARTIAL MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Respectfully submitted,

*/s/ Daniel S. Ward*

_____
Daniel S. Ward Admitted *Pro Hac Vice*
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, Virginia 22102
(202) 331-8160
dan@wardberry.com

Lawrence J. Laurenzi (TN Bar No. 9529)
Sarah E. Stuart (TN Bar No. 35329)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
(901) 524-5000
llaurenzi@bpjlaw .com
sstuart@bpjlaw.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................1

BACKGROUND ...........................................................................................2

ARGUMENT ...........................................................................................4

I.     LEGAL STANDARD.................................................................4

II.    THE COURT SHOULD NOT DISMISS THE
MISAPPROPRIATION OF TRADE SECRETS CLAIMS .......................5

     A.    RSLS Sufficiently Pleads The Elements Of A
Misappropriation Of Trade Secrets Claim Under The
Tennessee Uniform Trade Secrets Act ("TUTSA") .......................6

          1.    RSLS' Pricing Information Is A Protected
Trade Secret and RSLS Was Injured Due To
Defendants' Improper Disclosure Of RSLS's
Trade Secret In Violation Of The TUTSA ........................7

          2.    Defendants Misappropriated RSLS' Trade Secrets
By Improperly Disclosing RSLS' Pricing Information
To A Third Party, Indian Ocean .........................................8

III.    THE COURT SHOULD NOT DISMISS THE TORTIOUS
INDUCEMENT OF BREACH OF CONTRACT CLAIM ......................10

     A.    Caliburn Lost Its Privilege To Interfere With Its
Subsidiary's (Janus)'s Contract With RSLS When
Caliburn Acted Contrary To Janus' Economic Interest
And Employed Wrongful Means That Injured Janus ...................10

          1.    Caliburn Acted Contrary To Janus' Economic Interests
By Unnecessarily Exposing Janus To Legal Liability.......12

          2.    Caliburn Employed Wrongful Means To
Induce Janus Into Breaching the MSA ..............................14

IV.    JANUS BREACHED THE MSA BY VIOLATING ARTICLE 14
"CONFIDENTIALITY" OF THE MSA WHEN DISCLOSING
RSLS' PROPRIETARY INFORMATION TO INDIAN
OCEAN AS WELL AS THE NDA BETWEEN THE PARTIES............15

V.    CONCLUSION.........................................................................16

i

**TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page**

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2009) ......................................................................................4, 16

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) ...............................................16

*BNA Associates, LLC v. Goldman Sachs Specialty Lending,*
602 F.Supp.3d 1059 (M.D. Tenn. 2022) ..................................................................4, 14

*Boulevard Assocs. v. Sovereign Hotels, Inc.,*
72 F.3d 1029 (2d Cir. 1995) ....................................................................................11

*Dura Global Techs., Inc. v. Magna Donnelly Corp.,*
No. 07-CV-10945-DT, 2008 WL 2064516 (E.D. Mich. May 14, 2008) ...........................6

*Hauck Mfg. Co. v. Astec Indus., Inc.,*
376 F. Supp. 2d 808 (E.D. Tenn. 2005) ....................................................................10

*Landers v. LoanCare, LLC,*
2021 WL 6320987 (E.D. Tenn. Sept. 29, 2021) .................................................4, 5, 10

*McCoy v. Stonebridge Life Ins. Co.,*
2012 WL 4498819 (E.D. Tenn. Sept. 28, 2012) ..........................................................16

*Paglin v. Saztec International, Inc.,*
834 F. Supp. 1184 (W.D. Mo. 1993) ....................................................................11, 14

*University of Tennessee Research Foundation v. Caelum Biosciences, Inc.,*
2022 WL 19403695 (E.D. Tenn. 2022) ......................................................................6

*Vehicle Protection Plus, LLC v. Premier Dealer Services, Inc.,*
2007 WL 2668892 (E.D. Tenn. 2007) ..............................................4, 5, 7, 9, 12, 14

*Walker v. Massey,*
No. 3:22-CV-00417, 2023 WL 28435 (M.D. Tenn. Jan. 3, 2023) ..................................17

*Waste Conversion Sys., Inc. v. Greenstone Indus., Inc.,*
33 S.W.3d 779 (Tenn. 2000) ...............................................................................11, 14

*Western Excelsior Corp. v. Propex Operating Co.,, LLC and R. Lee Pierce,*
2017 WL 11195421 (E.D. Tenn. 2017) ...............................................................4, 6, 7

ii

*Williams-Sonoma Direct Inc., v. Arhaus LLC,*
109 F. Supp. 3d 1009, 1012-13 (W.D. Tenn. 2015) .................................................................7, 8

## Statutes and Rules

Fed. R. Civ. P. 8 .................................................................................................................4

Fed. R. Civ. P. 12(b)(6).....................................................................................................17

Tenn. Code. Ann. § 47-25-1702 .................................................................................6, 7, 8

Tenn. Code. Ann. § 47-50-109 ...........................................................................................10

Plaintiff R. S. Logistical Solutions LTD ("Plaintiff" or "RSLS"), hereby opposes Defendants Janus Global Operations, LLC ("Janus") and Caliburn International, LLC ("Caliburn") (collectively, "Defendants")'s Partial Motion to Dismiss (ECF 94) ("Motion") three counts in RSLS' February 6, 2023 First Amended Complaint (ECF 92) ("Complaint" Or "Compl.").  The Motion should be denied in its entirety. RSLS has sufficiently pled its claims for Janus' misappropriation of RSLS' trade secrets, Caliburn's tortious inducement of breach of contract, and Janus' breach of contract. As demonstrated herein, Defendants' arguments run contrary to the law and ignore well-pled facts.

## INTRODUCTION

RSLS sufficiently pled a trade secrets claim. RSLS identified the trade secrets. Compl., ¶ 17. RSLS alleged that Defendants misappropriated those trade secrets by, *inter alia,* improperly disclosing these trade secrets to RSLS' competitor. Compl., ¶ 53. Further, Caliburn's invocation of its alleged privilege to "interfere" with its wholly owned subsidiary (Janus)'s contract is unwarranted when Caliburn maliciously induced Janus to breach Janus' contract with RSLS for no legitimate reason, and to Janus' detriment. Caliburn employed wrongful means by misrepresenting facts to Janus. Finally, RSLS' breach of contract allegation regarding Defendants' violation of its confidentiality obligations to RSLS is supported by both the Master Subcontract Agreement ("MSA") and the prior executed Non-Disclosure Agreement ("NDA") between RSLS and Janus. The NDA is referred to in the Complaint. Compl., ¶ 22. The Complaint identifies two relevant contracts between RSLS and Janus – the MSA and the NDA. Janus has moved to dismiss RSLS' breach of contract claim as to Janus' violation of its confidentiality obligations to RSLS (which are found in both the NDA and the MSA). Janus' calendar games are resolved by looking to the NDA – a valid and binding contract between the parties that is referenced in the Complaint.

1

If the Complaint is confusing to the Court or Janus on this point, RSLS would respectfully request leave to amend to resolve this issue that is, frankly, little more than a scrivener's error.

## BACKGROUND

RSLS supports U.S. federal agencies operating in high-risk areas by providing logistics and specialized mission and life support services. Compl., ¶ 5. Janus contacted RSLS for assistance in preparing a bid proposal for the Department of State (DOS)'s contract for protective guard services, static guard service, and specialized security services at the U.S. Mission Somalia (the "Somalia RFP"). Compl., ¶ 12, 17. The Somalia RFP also called for secured residential compound and life support services, which was currently being provided by another company, Indian Ocean Properties, LLC ("Indian Ocean.") to the incumbent contractor SOC, LLC ("SOC"). Compl., ¶ 13. RSLS used its extensive in-region contacts and resources in Somalia to provide Janus with a detailed proposal and competitive pricing in support of the Somalia RFP. Compl., ¶ 17. As part of RSLS' proposal to Janus, RSLS included pricing for the use of the SKA Home Lodge (the "SKA Compound") as the secured housing provider. Compl., ¶ 23. RSLS advised Janus to exercise discretion with respect to information relating to the SKA Compound, including pricing. Compl., ¶ 18. RSLS took several steps, including using non-disclosure agreements, to prevent the unnecessary disclosure of the information related to the SKA Compound. Compl., ¶ 22.

On May 10, 2019, Janus submitted the proposal to DOS which included RSLS' subcontractor proposal and pricing for the use of the SKA Compound. Compl., ¶ 24. Janus was awarded the contract by DOS, which was then protested by SOC, the incumbent contractor. Compl., ¶ 28-30. RSLS assisted Janus during SOC's protest by using its in-country network to perform time and motion studies and compile critical non-public information that was only locally

2

accessible. Compl., ¶ 32-33. This information was crucial in defeating SOC's protest so Janus could keep the awarded contract. Compl., ¶ 34.

In December 2019, Roy Shaposhnik, RSLS' owner and president, and Adam Doolittle, RSLS' Chief Strategy Officer, had lunch with Randy Leonard, Janus' project manager for the Somalia Task Order, in which Leonard told RSLS that Indian Ocean had recently submitted another proposal to Janus to provide residential and life support services. Compl., ¶ 41. On January 8, 2020, Indian Ocean produced a price quote to Janus that was a 24% discount from Indian Ocean's original proposals and essentially identical to the pricing quote provided by RSLS and incorporated in the Janus' Proposal. Compl., ¶ 50-53. Meanwhile, a Senior Vice President from Caliburn, Thomas Heasley was contacted by the Director of Diplomatic Security Service's Office of Overseas Protective Operations ("OPO"), Dominic "Nick" Saburno who encouraged Heasley to travel to Somalia. Compl., ¶ 57.

On January 21, 2020, RSLS and Janus fully executed the MSA. Compl., ¶ 43. The MSA contained several provisions including a termination clause (Article 12) and a confidentiality clause (Article 14). Compl., ¶ 44-49. On January 22, 2020, Heasley reached out to Leonard to tell him that the Embassy staff had hoped that SOC would win the task order. Compl., ¶ 63. The next day, Heasley emailed Leonard expressing a negative assessment of the SKA Compound and told Leonard to not commit to the agreement with RSLS and instead look for pricing for a different housing location. Compl., ¶ 65. While Leonard followed this direction from Heasley, a representative of Caliburn, Leonard also requested that RSLS sign and return an attached Purchase Order to begin preparation of the MSA work. Compl., ¶ 67-68. Several days later, on January 29, 2020, Heasley told Leonard that Janus was to cancel the MSA with RSLS and subcontract with

Indian Ocean. Compl., ¶ 75. On February 4, 2020, Janus emailed a letter to RSLS terminating the MSA. Compl., ¶ 82.

**ARGUMENT**

## I.    LEGAL STANDARD.

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Landers v. LoanCare, LLC*, 2021 WL 6320987, at *2 (E.D. Tenn. Sept. 29, 2021) (quoting Fed. R. Civ. P. 8(a)(2)). The factual allegations must "state a claim to relief that is plausible on its face," and while, "not akin to a probability requirement", plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Landers*, 2021 WL 6320987 at *3. When considering a motion to dismiss, the court construes "the complaint in the light most favorable to the plaintiff, accepts all well-pled factual allegations in the complaint as true, and draw all reasonable inferences in favor of the Plaintiff." *BNA Assocs., LLC v. Goldman Sachs Specialty Lending*, 602 F.Supp.3d 1059, 1062 (M.D. Tenn. 2022). "Though the statement need not contain detailed factual allegations, it must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Landers*, 2021 WL 6320987 at *2 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Vehicle Prot. Plus, LLC v. Premier Dealer Servs., Inc.*, 2007 WL 2668892, at *2 (E.D. Tenn. 2007). "If the complaint's claim for relief 'is at all plausible (beyond a wing and a prayer),' then the court must deny the motion to dismiss and permit the case to proceed." *BNA Assocs., LLC*, 602 F.Supp.3d at 1062.

RSLS' Complaint contains "direct or inferential allegations respecting all the material elements to sustain recovery." *Western Excelsior Corp. v. Propex Operating Co., LLC and R. Lee*

4

*Pierce*, 2017 WL 11195421, at *2 (E.D. Tenn. 2017) (citations omitted). The Complaint contains sufficient "factual content" that would allow this Court "to draw the reasonable inference" that Janus is liable for the misappropriation of RSLS' trade secrets, breach of the MSA agreement, and that Caliburn is liable for tortious interference with Janus' contract with RSLS. *Landers*, 2021 WL 6320987 at *2.

## II.      THE COURT SHOULD NOT DISMISS THE MISAPPROPRIATION OF TRADE SECRETS CLAIM.

Defendants ignore RSLS' factual allegations which clearly identify RSLS' pricing information as a trade secret (Compl., ¶ 17-19), RSLS' attempts for secrecy (Compl., ¶ 22), and Janus' misappropriation of the trade secret through the improper disclosure of RSLS' pricing to Indian Ocean (Compl., ¶ 51-53). Defendants argue that RSLS' allegation that the "timing and precision of Indian Ocean's discounted quote" as indicative of an improper disclosure of a trade secret is an "unsubstantiated, conclusory claim." Motion at 13. Defendants propose an alternative and competing explanation as to why Indian Ocean's quote was discounted and similar to RSLS' quote. Motion at 16. At this stage, when a well-pled allegation has more than one reasonable inference, the court must construe it in favor of the plaintiff. *Vehicle Prot. Plus, LLC*, 2007 WL 2668892, at *2. The vitality of Defendants' alternative explanation is a question of fact that cannot be resolved on a motion to dismiss. Simply put, Defendants are making a Motion for Summary Judgment argument, not a Motion to Dismiss argument. RSLS has sufficiently pled the necessary elements of a misappropriation of trade secrets claim. As such, Defendants' Motion to Dismiss should be denied.

5

**A.     RSLS Sufficiently Pleads The Elements Of A Misappropriation Of Trade Secrets Claim Under The Tennessee Uniform Trade Secrets Act ("TUTSA").**

"A plaintiff sufficiently states a claim for misappropriation of trade secrets by identifying the specific things it claims to constitute trade secrets and by alleging these items were misappropriated by the defendants." *Western Excelsior Co.*, 2017 WL 11195421, at *2 (finding that the plaintiff had sufficiently pled a claim for misappropriation of trade secrets when the plaintiff had identified the specific things the plaintiff had claimed were trade secrets and by alleging those items were misappropriated by defendants) (citations omitted). Under TUTSA, the elements for misappropriation of trade secrets are: (1) existence of a trade secret;[1] (2) misappropriation of the trade secret by the defendant;[2] and (3) resulting detriment to the plaintiff.[3] *See Western Excelsior Co.*, 2017 WL 11195421, at *2 (finding that the plaintiff had satisfied the Rule 8(a)'s pleading requirement when "identifying the specific things it claims constitute trade secrets and by alleging those items were misappropriated by defendants.").

RSLS has identified "with reasonable particularity" the trade secrets that Defendants have misappropriated, namely RSLS' protected pricing information. *See University of Tennessee Research Foundation v. Caelum Biosciences, Inc.*, 2022 WL 19403695, at *2 (E.D. Tenn. 2022) (citing *Dura Global Techs., Inc. v. Magna Donnelly Corp.*, No. 07-CV-10945-DT, 2008 WL 2064516, at *1 (E.D. Mich. May 14, 2008)). RSLS has met the reasonable particularity standard which requires that the Complaint places the "adverse party…on notice of the nature of the claims." *Id.* at *2 (citations omitted). In considering a Motion to Compel this Court has determined that even during the discovery phase, a plaintiff need not establish the existence of a trade secret,

---

[1] *See* Compl., ¶ 17, 18, 19, 22.
[2] *See* Compl., ¶  52, 53
[3] *See* Compl., ¶ 75, 82.

6

but rather is required only to identify its trade secrets with reasonable particularity. *Id.* at *3. RSLS has sufficiently identified its trade secrets with enough particularity at the pleadings stage to put Defendants on notice of the nature of the misappropriation claim.

1. **RSLS' Pricing Information Is A Protected Trade Secret and RSLS Was Injured Due To Defendants' Improper Disclosure Of RSLS' Trade Secret In Violation Of The TUTSA.**

Defendants only challenge whether RSLS has plausibly alleged the misappropriation element of the TUTSA. Motion at 14-16. In the Complaint, RSLS alleged that it provided Janus with a subcontractor proposal which contained proprietary information, including protected pricing information RSLS had with its third-party vendor, SKA Somalia ("SKA").[4] Compl., ¶ 17, 20. Additionally, RSLS pled that the trade secret is confidential and proprietary trade secret information that has derived its "independent economic value (actual or potential) from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from the disclosure or use of this information." [5] Compl., ¶ 166. RSLS "took steps, including the use of non-disclosure agreements ["NDA"], to prevent unnecessary disclosure of SKA as the secured housing provider in its subcontractor proposal." Compl., ¶ 22.

Further, RSLS alleged in the Complaint that "Defendants caused injury to RSLS in violation of Tennessee's Trade Secret Act." Compl., ¶ 170; *See also Williams-Sonoma Direct Inc.*, 109 F.Supp.3d 1009, 1018 (W.D. Tenn. 2015)(requiring that plaintiffs only had to show that they possessed a trade secret that the defendants had misappropriated to establish the likelihood of

---

[4] *See e.g.*, *Western Excelsior Co.*, 2017 WL 11195421, at *2 (finding that the plaintiff's list of confidential materials which included "customer lists, customer pricing platforms and structures, **pricing lists**, bid documents, master pricing strategies…**pricing information**…competitive bid strategies, case studies, business partnerships…future business development plans" constituted trade secrets) (emphasis added).

[5] *See e.g.*, *University of Tennessee Research Foundation*, 2022 WL 19403695, at *2 (defining a trade secret as information that "(1) derives independent economic value from not being generally known nor readily ascertainable; and (2) is the subject of efforts to maintain its secrecy" by citing TUTSA, Tenn. Code Ann. § 47-25-1702).

7

success for a misappropriation of trade secrets claim under TUTSA in a preliminary injunction motion and did not have to show proof of detriment outside the misappropriation itself).

### 2. Defendants Misappropriated RSLS' Trade Secrets By Improperly Disclosing RSLS' Pricing Information To A Third-party, Indian Ocean.

Defendants challenge whether RSLS has plausibly alleged the misappropriation of a trade secret. Motion at 15. As is relevant here, misappropriation means "disclosure without consent of a trade secret by a person who knows or has reason to know that it was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." *Williams-Sonoma Direct, Inc.*, 109 F. Supp. 3d at 1017-18 (citing Tenn. Code Ann. § 47-25-1702(2)).

Defendants acquired the trade secret from RSLS when RSLS gave Janus RSLS' subcontractor proposal which identified the SKA Compound as the proposed residential compound. *See* Compl., ¶ 17. Defendants clearly knew they had a duty to keep RSLS' trade secrets confidential, in fact, they had a contractual duty to keep the pricing information and the rest of RSLS' proprietary information secret and not disclose the trade secrets to others. Under the NDA, Defendants knew that Defendants had a duty to maintain the secrecy of the pricing information and limit its use. Compl., ¶ 22 ("RSLS took steps, including the use of non-disclosure agreements, to prevent unnecessary disclosure of SKA as the secured housing provider in its subcontractor proposal."). The Complaint clearly alleges that RSLS "advised Janus to exercise discretion with respect to SKA because it was a relatively young, strategic relationship that RSLS was cultivating with the aim of developing a valuable, long-term partner in Somalia." Compl., ¶ 18.

The Complaint alleges that Defendants, in possession of RSLS trade secrets, improperly used and disclosed RSLS pricing information to RSLS' competitor Indian Ocean, constituting the type of "disclosure without consent" that is plainly misappropriation. Compl., ¶ 52-53. As RSLS and Defendants were negotiating the master subcontractor agreement ("MSA"), Defendants

8

wanted to use Indian Ocean as its housing provider. Compl., ¶ 77. During the initial bid, Indian Ocean's price estimate to Janus was so inflated that Janus reached out to RSLS for a quote which started the beginning of Janus and RSLS' business relationship. Compl., ¶ 15-16. Defendants, after accepting and using RSLS' subcontractor proposal to win the DOS contract, terminated Janus' contract with RSLS, and proceeded to perform the DOS contract with Indian Ocean as the subcontractor. Compl., ¶ 82, 116. RSLS learned from Janus that Indian Ocean had submitted a second proposal, which was priced $6-7 million higher than RSLS' accepted quote. Compl., ¶ 41. Several days before RSLS and Janus fully executed the MSA, Indian Ocean again approached Defendants with another price proposal, this time with a significant discounted price, which "undercut RSLS' pricing by a miniscule amount and presented an essentially identical quote to that provided by RSLS and incorporated in Janus' proposal." Compl., ¶ 52. The timing and precision of Indian Ocean's new and discounted price quote strongly indicates that Defendants, who wanted to use Indian Ocean as a subcontractor instead of RSLS, gave RSLS' pricing proposal to Indian Ocean to persuade Indian Ocean to lower its prices. Compl., ¶ 53.

Finally, Defendants' proposition that there are other possibilities as to how Indian Ocean obtained RSLS' trade secrets is, at best, premature, and is not a sufficient basis to support dismissal on a Rule 12(b)(6) Motion. Defendants argue that Indian Ocean's price reduction was motivated by economic self-interest, when Indian Ocean realized it was going to lose valuable business by not serving as the subcontractor to the new prime contractor. Motion at 15. This argument is an alternative inference of RSLS' allegation that should be interpreted in RSLS' favor. *See Vehicle Protection Plus, LLC.*, 2007 WL 2668892, at *2 ("When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor."). RSLS has alleged that that Defendants were being pressured by DOS to terminate Janus' contract with RSLS in favor of using Indian

Ocean as the subcontractor. *See* Compl., ¶ 63-65. RSLS has also alleged that the timing and precision of Indian Ocean's quote strongly indicates that Defendants disclosed RSLS' proposal to Indian Ocean to obtain a lower price than what Indian Ocean initially offered to Janus. Compl., ¶ 53. RSLS has met its burden of pleading sufficient facts to support its claim of misappropriation. Once again, Defendants are making premature factual arguments to attack an adequately plead Complaint. Defendants are free to make these arguments at the proper time – either at summary judgment or at trial.

## III. THE COURT SHOULD NOT DISMISS THE TORTIOUS INDUCEMENT OF BREACH OF CONTRACT CLAIM

### A. Caliburn Lost Its Privilege To Interfere With Its Subsidiary's (Janus)'s Contract With RSLS When Caliburn Acted Contrary To Janus' Economic Interest And Employed Wrongful Means That Injured Janus.

The unlawful procurement of breach of contract under Tenn. Code. Ann. § 47-50-109 has the same elements as the common law action for tortious interference with contract. *See Hauck Mfg. Co. v. Astec Indus., Inc.*, 376 F. Supp. 2d 808, 832 (E.D. Tenn. 2005) (citations omitted). A claim for unlawful procurement of breach of contract must allege: "(1) that there was a legal contract;[6] (2) that the wrongdoer had sufficient knowledge of the contract;[7] (3) that the wrongdoer intended to induce its breach;[8] (4) that the wrongdoer acted maliciously;[9] (5) that the contract was

---

[6] *See* Compl., ¶ 62 ("The MSA was fully executed on January 21, 2020 and provided January 19, 2020 as the effective date for the MSA.").
[7] *See* Compl., ¶ 72 ("Leonard [Janus' project manager for the Somalia Task Order] again remained Heasley [a Vice President at Caliburn] that Janus have (*sic*) already signed an agreement with RSLS."); *See also* Compl., ¶ 102.
[8] *See* Compl., ¶ 75 ("Heasley had informed Leonard that Janus would be cancelling the MSA with RSLS.").
[9] *See* Compl., ¶ 75 (Heasley used the DOS' alleged direction as pretext for why the contract had to be cancelled).

10

breached;[10] (6) that the act complained of was the proximate cause of the breach;[11] and (7) that damages resulted from the breach.[12]" *Landers*, 2021 WL 6340987, at *3 (citations omitted, footnotes added) (dismissing the plaintiff's claim where plaintiff failed to pled sufficient facts of malice).

Defendants argue that this count should be dismissed on the basis that Caliburn is privileged to interfere in the business of its wholly-owned subsidiary, Janus.[13] But a parent corporation's privilege to interfere with its wholly-owned subsidiary's contracts is not absolute and can be lost "if the parent company acts contrary to the subsidiary's economic interests or if the parent corporation employs wrongful means in such situations." *Waste Conversion Sys., Inc. v. Greenstone Indus., Inc.*, 33 S.W.3d 779,780 (Tenn. 2000). In Tennessee, invocation of the privilege is limited **only** to instances when the parent directed "the wholly-owned subsidiary to breach a contract that is no longer in the subsidiary's economic interest to perform." *Id.* at 783 (citing *Boulevard Assocs. v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1036 (2d Cir. 1995)) (emphasis added).

In addition to the breadth of what may be "contrary to the subsidiary's economic interests," the definition of wrongful means includes "acts which are wrongful in and of themselves," including "misrepresentation of facts . . . restraint of trade," or any acts of fraud or misrepresentation. *Id.* at 784 (citing *Boulevard Assocs.*, 72 F.3d at 1037 and *Paglin v. Saztec International, Inc.*, 834 F. Supp. 1184 (W.D. Mo. 1993)).

---

[10] *See* Compl., ¶ 82.
[11] *See* Compl., ¶ 75.
[12] *See* Compl., ¶ 119-122.
[13] Although RSLS has not conceded in its Complaint that Janus is a wholly-owned subsidiary of Caliburn, it assumes for purposes of this Motion that Defendants' assertion of that fact in its Motion to Dismiss is accurate. Motion at 18.

11

1. **Caliburn Acted Contrary To Janus' Economic Interests By Unnecessarily Exposing Janus To Legal Liability.**

Caliburn's inducement of Janus' breach of the MSA is contrary to Janus' economic interests to avoid expensive litigation and loss profits. The Court in *Vehicle Protection Plus* denied the defendants' motion to dismiss the plaintiff's inducement of breach of contract claim when finding that the plaintiff had alleged sufficient facts that, "if true and proven by the plaintiff, would require a conclusion that [defendants] are not entitled to the 'unity-of-interest' privilege." *Vehicle Prot. Plus LLC*, 2007 WL 2668893, at *3. In *Vehicle Protection Plus LLC*, the plaintiff alleged that the parent corporation acted against the economic interest of its wholly owned subsidiary when it prohibited the subsidiary from performing the contract, which resulted in the subsidiary losing profits from the agreement it had with the plaintiff and exposing the subsidiary to "liability for breach of the agreement." *Id.*

Caliburn knew of Janus' contractual obligations under the MSA, including Article 12 "Suspension and Terminations" and Article 14 "Confidentiality" when Caliburn directed Janus to terminate the MSA. *See* Motion, ECF 94-3 at 15,17; *see also* Compl., ¶ 75. By failing to terminate the MSA pursuant to the requirements under Article 12 of the MSA, Janus breached the MSA. Compl., ¶ 124-32. Caliburn's inducement of Janus to improperly terminate the MSA exposed Janus to liability for breach of contract. Caliburn's actions match those of the parent corporation defendant in *Vehicle Protection Plus, LLC,* where the parent corporation's inducement of its subsidiary to breach a contract exposed the subsidiary to liability. 2007 WL 2668893, at *3.

Defendants make a number of factual arguments to support their position that that Caliburn was acting in Janus' economic self-interest because Caliburn and DOS had "serious concerns about the SKA Facility" and that Janus "risked losing the Somalia Task order if it did not change housing providers." Motion at 19. Defendants directed the Court's attention to a January 23, 2020 email

12

chain between Caliburn's employee, Heasley, and Janus' employee, Leonard to argue that Caliburn was acting in Janus' best interests. Motion at 20. However, in that same email chain Leonard reminded Heasley that Janus already had a contract with RSLS, that Janus works with RSLS on other proposals, and that a "bad break-up would be detrimental" to Janus' performance on another proposal. ECF 94-4 at 2 (January 24, 2020 Email from Randy Leonard to Thomas Heasley). Leonard stated that the camp at SKA would be finished in time and that he was "confident" that the requirements would be met. *Id.* Leonard expressed frustration about the Government's change, but that they would need a modification from the government to change anything. *Id.* In response, Heasley started that he was told by another person that "SKA is a no go, so much that we may lose the contract for default." Heasley explained that "they" (assuming DOS) wanted to keep "the team on the IC." *Id.* (January 24, 2020 Email from Thomas Heasley to Randy Leonard). In another email, submitted as Exhibit 4 by Defendants, Heasley explained that the issue with housing was that among other issues, "they" (assuming DOS) were "concerned about retention issues with the change of scenery" and that the staff "really like the 'extras' living in the [Indian Ocean Facility]". *See* ECF 94-5 at 2 (January 22, 2020 Email from Thomas Heasley to Randy Leonard).

Defendants' argument that the termination and breach of the MSA was necessary to avoid the harm that a termination for default could have for Janus is a factual dispute that is not appropriate to resolve at this stage. Motion at 19-20. The emails show that Caliburn insisted "they," (who "they" exactly is will be explored in discovery) wanted to keep the Indian Ocean facility and not move to SKA for reasons that appear to be superficial. *See* ECF 94-5 at 2. While the government may modify or change a contract for any reason, the government must issue a modification or change order first.

The emails offered by Defendants in support of their Motion emails show that there are two competing inferences as to why Caliburn induced Janus to terminate the MSA with RSLS over the SKA housing. The email from Heasley reveals that Heasley was stating his opinion that Janus may be terminated by default and that the government employees at the site were disappointed that the incumbent contractor had lost the bid. *See* ECF 94-5 at 2. Defendants have not shown that there was an actual threat of default nor any direction from the DOS to change the housing to Indian Ocean. Moreover, these arguments require the Court to weigh factual proof, and, at this posture, the Court must take all facts in the light most favorable to RSLS. *See BNA Associates, LLC*, 602 F.Supp.3d at 1062.  It is well established that the Court must accept all RSLS' factual allegations as true when considering Defendants' Motion. *Vehicle Protection Plus, LLC*, 2007 WL 2668893 at *2 (denying the defendants' motion to dismiss when finding that the plaintiff had sufficiently pled facts, that if were true, would overcome the unity of interest privilege). RSLS has pled sufficient facts to show that it is plausible that Caliburn acted detrimentally to its subsidiary's economic interests when inducing Janus to breach the MSA. *Waste Conversion Sys. Inc.*, 33 S.W.3d at 783.

## 2. Caliburn Employed Wrongful Means To Induce Janus Into Breaching The MSA.

Finally, Caliburn's privilege to interfere with Janus' contracts can be lost even if Caliburn does not act contrary to Janus' economic interests, if Caliburn employs "wrongful means or interferes for an improper purpose." *Waste Conversion Sys., Inc.*, 33 S.W.3d at 783-84 (citations omitted). Wrongful means can include acts such as "misrepresentation of facts." *Id.* (citing *Paglin*, 834 F. Supp. at 1196). RSLS has sufficiently alleged that Caliburn actively orchestrated the circumstances that prevented Janus from performing the MSA and breaching the contract by misrepresenting the situation as to whether Janus was in danger of being terminated for default.

14

Compl., ¶ 149. While advised by the DOS to visit Somalia, Caliburn acted improperly when Heasley visited the SKA Compound in its unrefurbished condition (without informing RSLS of his visit) and gave a negative assessment of the housing site to Janus' project manager, knowing that Janus and RSLS had just executed the MSA. Compl., ¶¶ 58, 65.

Despite reassurances from Janus that the SKA Compound could be finished in time, Heasley continued to recommend that Janus not commit to the agreement and look for alternative housing. ECF 94-4 at 2. Heasley told Janus that the Embassy staff was hoping that SOC would win the Task Order, that the DOS was concerned about the "housing site and the added reaction time", that the DOS was concerned about retention issues, and that the "guys really like the 'extras' living in the [Indian Ocean site.]". ECF 94-5 at 2. In the same email, Heasley said that he told DOS that "the last sentence on housing in [Janus'] proposal says we'll basically do what the RSO wishes." *Id*. There is no indication in that email that Janus was in threat of losing the contract due to default. Two days later, Heasley tells Janus that there's a possibility of default. ECF 94-4. However, there is no evidence that DOS directed Defendants to look for new housing and no evidence that DOS was threatening to terminate Janus' contract for default, other than Heasley's words. Compl., ¶ 68. RSLS has sufficiently alleged that Caliburn misrepresented the situation around the housing to encourage its subsidiary to break the contract with RSLS and pursue housing with Indian Ocean, such that Caliburn's asserted privilege to interfere in Janus' contract with RSLS is an insufficient basis for dismissal at this stage.

## IV. JANUS BREACHED THE MSA BY VIOLATING ARTICLE 14 "CONFIDENTIALITY" OF THE MSA WHEN DISCLOSING RSLS' PROPRIETARY INFORMATION TO INDIAN OCEAN AS WELL AS THE NDA BETWEEN THE PARTIES

Defendants' argument as to Plaintiff's breach of contract count likewise prematurely asks this Court to weigh factual evidence at the pleadings stage. Under Tennessee law, RSLS must

15

pled: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *McCoy v. Stonebridge Life Ins. Co.*, 2012 WL 4498819, at *2 (E.D. Tenn. Sept. 28, 2012) (citations omitted). "The *Twombly/Iqbal* standard is a pleading standard, not a proof standard, and the Court agrees with plaintiff that he has pleaded sufficient facts to state a plausible claim for relief for breach of contract." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) and *Iqbal*, 129 S. Ct. at 1949. In RSLS' Complaint, RSLS realleged and incorporated all paragraphs in RSLS' Count I: Breach of Contract claim. Compl., ¶123.

Janus and RSLS had an enforceable contract under the NDA. The Complaint adequately alleges the existence of the NDA. Compl., ¶ 22. While the Complaint focuses on the MSA as the contract breached, there were two contracts between the parties: the MSA and the April 5, 2019 NDA. The existence of both is alleged in the Complaint. Compl., ¶ 22, 62. Defendant Janus' breach of the agreements is adequately alleged in the Complaint. Compl., ¶ 53, 117-118. The Complaint also alleges the damages suffered by RSLS as a result of Janus' breaches of its obligations under both the NDA and the MSA. Compl., ¶ 52-53, 119-122. To the extent the Court narrowly reads RSLS' Complaint to not incorporate the NDA, RSLS alternatively submits that such an interpretation could be corrected with an Amended Complaint to detail the timeline and contractual bases for Defendants' breaches. The timing of a disclosure by Defendants is, once again, a question of fact that is more appropriate for a summary judgment argument, rather than a barrier to discovery.

V.     CONCLUSION

For the reasons stated above, RSLS requests that this Court DENY Defendants' Partial Motion to Dismiss. Alternatively, if the Court does grant Defendants' Motion, in whole or in part,

Plaintiff respectfully requests leave to promptly file an amended complaint to address any issues that the Court feels need be addressed.[14]

Respectfully submitted,

/s/ Daniel S. Ward

May 11, 2023

_____
Daniel S. Ward Admitted *Pro Hac Vice*
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, Virginia 22102
(202) 331-8160
dan@wardberry.com

Lawrence J. Laurenzi (TN Bar No. 9529)
Sarah E. Stuart (TN Bar No. 35329)
BURCH, PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, TN 38103
(901) 524-5000
llaurenzi@bpjlaw .com
sstuart@bpjlaw.com

*Counsel for Plaintiff*

---

[14] *Walker v. Massey*, No. 3:22-CV-00417, 2023 WL 28435, at *7-8 (M.D. Tenn. Jan. 3, 2023) (permitting the plaintiff to file an amended complaint "that addresses the deficiencies noted [within the court's memorandum opinion and order] with respect to the [dismissed without prejudice] claim of negligence *per se*."). The court in *Walker* analyzed similar cases in other circuits, including the Sixth Circuit, to find that the "authorities do not deny the [c]ourt's discretion to grant leave to file an amended complaint after dismissing one or more claims under Rule 12(b)(6), especially where…the plaintiff(s) at least raised the issue of amendment and requested (albeit here only in a brief, and not in a proper motion) leave to amend the [c]omplaint in the event it were dismissed under Rule 12(b)(6)." *Id.*

17

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing document has been served on counsel of record on this 11th day of May 2023, via the Court's ECF system.

*/s/ Daniel S. Ward*

_____

Daniel S. Ward